## UNITED STATES *v.* ANDERSON.

No. 447. Argued March 26, 1946.—Decided June 10, 1946.

*Nathan T. Elliff* argued the cause for the United States. With him on the brief were *Solicitor General McGrath* and *Robert S. Erdahl.*

No appearance for appellee.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

On the merits the issue is narrow, namely, whether in a criminal prosecution under § 11 of the Selective Training and Service Act, 54 Stat. 885, 894, 50 U. S. C. App. § 311, for refusal to submit to induction, the venue is properly laid in the judicial district where the act of refusal occurred

rather than in the district where the draft board which issued the order is located.

The facts in the case are simple. A draft board in the City of Spokane, Washington, had jurisdiction over appellee. He obeyed an order to report for induction issued by this board and, with others selected, went from Spokane to Fort Lewis, Washington. At Fort Lewis he refused to take the oath of induction unless assured that Army regulations requiring vaccination would be waived. The assurance was refused. He was not inducted and returned to Spokane. Later he was indicted in the District Court for the Western District of Washington, where Fort Lewis is located, for his refusal to submit to induction.

Appellee demurred to the indictment. One ground was that the court had "no jurisdiction of the defendant or the subject matter of the action." The District Court took judicial notice that, although Fort Lewis was within its territorial jurisdiction, the City of Spokane was located within the Eastern District of Washington. Believing the proper venue was the district where the draft board was located, the court concluded that in these circumstances it had no jurisdiction over the offense. Accordingly, it sustained the demurrer.[1]  60 F. Supp. 649.

The United States has appealed directly to this Court under the Criminal Appeals Act.[2]  We postponed determination of our jurisdiction to the hearing on the merits.

The Criminal Appeals Act permits a direct appeal by the United States from district courts in criminal cases:

> "From a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement

---

[1] Subsequently on rehearing the District Court again sustained the demurrer on the ground that "this court has no jurisdiction of the defendant, nor of the subject matter of this action."

[2] Act of March 2, 1907, 34 Stat. 1246, as amended by the Act of May 9, 1942, 56 Stat. 271; 18 U. S. C. § 682.

to any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded."

We think the Government is correct in availing itself of the right to appeal. Ordinarily when a district court sustains a demurrer to an indictment on the ground of improper venue the Government may appeal directly to this Court. Compare *United States* v. *Johnson,* 53 F. Supp. 596, with *United States* v. *Johnson,* 323 U. S. 273; *United States* v. *Lombardo,* 228 F. 980, with *United States* v. *Lombardo,* 241 U. S. 73; see *United States* v. *Freeman,* 239 U. S. 117; *United States* v. *Midstate Horticultural Co.,* 306 U. S. 161. This is true at any rate where the statute itself contains a venue provision. Cf., however, *United States* v. *Johnson, supra.*

Section 11 of the Selective Training and Service Act [3] provides that offenses such as the one with which appellee

---

[3] Section 11 of the Selective Training and Service Act of 1940 (54 Stat. 894, 50 U. S. C. App. § 311) provides:

"Any person charged as herein provided with the duty of carrying out any of the provisions of this Act, or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty, and any person charged with such duty, or having and exercising any authority under said Act, rules, regulations, or directions who shall knowingly make, or be a party to the making, of any false, improper, or incorrect registration, classification, physical or mental examination, deferment, induction, enrollment, or muster, and any person who shall knowingly make, or be a party to the making of, any false statement or certificate as to the fitness or unfitness or liability or nonliability of himself or any other person for service under the provisions of this Act, or rules, regulations, or directions made pursuant thereto, or who otherwise evades registration or service in the land or naval forces or any of the requirements of this Act, or who knowingly counsels, aids, or abets another to evade registration or service in the land or naval forces or any of the requirements of this Act, or of said rules, regulations, or directions, *or who in any manner shall knowingly fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations*

was charged shall be tried "in the district court of the United States having jurisdiction thereof." [4] The District Court determined that it did not have "jurisdiction" of the offense. In doing so it necessarily construed the Act.[5] For in this case, as in *United States* v. *Midstate Horticultural Co., supra,* the statute under which the indictment was returned "provides expressly for the jurisdiction over offenses created by it . . . ." [6]

Accordingly this Court has jurisdiction of the appeal. We therefore pass to consideration of the merits.

The "jurisdictional" provision in § 11 is apparently derived from the Selective Draft Act of 1917, 40 Stat. 76.[7]

---

*made pursuant to this Act,* or any person or persons who shall knowingly hinder or interfere in any way by force or violence with the administration of this Act or the rules or regulations made pursuant thereto, or conspire to do so, shall, *upon conviction in the district court of the United States having jurisdiction thereof,* be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment, or if subject to military or naval law may be tried by court martial, and, on conviction, shall suffer such punishment as a court martial may direct. . . ." (Emphasis added.)

[4] The Government suggests that this is not a "mere venue provision" but "prescribes a non-waivable territorial jurisdiction limitation." We need not decide that question in this case.

[5] This is true, even though the District Court looked to the regulations promulgated under the Act as aids in interpretation. To what sources a court may go for its conclusions is not important, for purposes of the Criminal Appeals Act, so long as the end result is a construction of the statute.

[6] *United States* v. *Midstate Horticultural Co.,* 306 U. S. 161, 163, note 2. That case turned on a not very dissimilar provision. *Id.* at 164–165. Cf. note 4.

[7] No discussion of the provision is to be found in the legislative history of the Selective Training and Service Act. The bills introduced in the Senate and the House contained the same language employed in the Act as it was finally passed. S. 4164, 76th Cong., 3d Sess., introduced at 86 Cong. Rec. 8680; H. R. 10132, 76th Cong., 3d Sess., introduced at 86 Cong. Rec. 8908.

Section 6 of that statute provided that those charged with offenses under or against the Act "shall, if not subject to military law, be guilty of a misdemeanor, and *upon conviction in the district court of the United States having jurisdiction thereof,* be punished by imprisonment for not more than one year . . . ." (Emphasis added.) The legislative history of the 1917 Act shows that the bills originally introduced in the Senate and House of Representatives read somewhat differently. The language was "upon conviction in the proper district court of the United States." However, the Committee on Military Affairs of the House of Representatives recommended the change in phraseology,[8] and both the House and the Senate accepted the change.[9]

There is nothing in either the statute or the legislative history to show an intention on the part of Congress to depart from the Sixth Amendment's command that trials shall be in the "State and district wherein the crime shall have been committed . . . ." Exactly the contrary was the purpose and effect of the provision.

Since the statute does not indicate where Congress considered the place of committing the crime to be, compare *Armour Packing Co.* v. *United States,* 209 U. S. 56, with *United States* v. *Johnson, supra,* the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it. Cf. *United States* v. *Bowman,* 260 U. S. 94, 97–98.

Although Anderson reported to Fort Lewis in accordance with the draft board's order and, so far as appears,

---

[8] H. R. Rep. No. 17, 65th Cong., 1st Sess., 1.

[9] The House of Representatives passed the bill with the provision as recommended by the Committee on Military Affairs. The Senate passed it with the provision in its original form but subsequently a conference committee adopted the House version. H. R. Rep. No. 49, 65th Cong., 1st Sess.

observed it in every other respect except the final step of taking the oath and thus submitting to induction, cf. *Estep* v. *United States,* 327 U. S. 114; *Billings* v. *Truesdell,* 321 U. S. 542; *Falbo* v. *United States,* 320 U. S. 549, the District Court concluded that the Act, together with the regulations, "clearly fixes the jurisdiction of the courts in reference to violations such as here involved, as being in the place where the local draft board is located." It supported this conclusion by inference from various regulations.[10]

We think the District Court was in error. Nothing in the Act apart from § 11, or in the regulations relied on, even purports to deal with venue or jurisdiction for the trial of violations, or justifies an inference that any effort was made to fix the place for all such trials in the district where the draft board is located.[11] We need not inquire how far this might have been done, if attempted. But obviously, in view of the Sixth Amendment's provision, no such over-all effort could be effective as to any violation taking place outside that district. The constitutional

---

[10] The regulations upon which the District Court relied in part, with special emphasis on § 613.14, are not pertinent. As the Government says, they relate "to the performance of the administrative functions of the Selective Service System and are not directed in any sense to the question of venue" or jurisdiction of the courts to try offenses arising under the Act.

The District Court also thought some support for its ruling could be derived from the decisions in *United States* v. *Collura,* 139 F. 2d 345, and *United States* v. *Van Den Berg,* 139 F. 2d 654, although not regarding either as directly in point.

[11] It was noted in the petition for rehearing in the District Court, however, that the Department of Justice in 1942 had instructed United States Attorneys that, in cases of failure to report for induction, "venue is in the district where the subject was ordered to report," apparently without regard to whether he had ever been present physically there.

specification is geographic; and the geography prescribed is the district or districts [12] within which the offense is committed. This may or may not be the place where the defendant resides; where the draft board is located; or where the duty violated would be performed, if performed in full. The places of residence,[13] of the draft board's location, of final and complete performance,[14] all may be situated in districts different from that where the criminal act is done. When they so differ, it is the latter, not any of the former, which determines the jurisdiction.[15]

It is, of course, necessary in order to decide where the crime is committed to ascertain what duty it was, the failure to perform which constitutes the crime, and also what acts of the defendant constituted the violation. Difficulties at times arise in these respects, especially where the crime consists merely in omitting to do something which is commanded to be done.[16]

---

[12] Within the doctrine of continuing offenses, as to which trial constitutionally may be had in one or another of the districts in which the offense is carried on. *Armour Packing Co.* v. *United States,* 209 U. S. 56; cf. *United States* v. *Johnson,* 323 U. S. 273.

[13] Cf. *Haas* v. *Henkel,* 216 U. S. 462; *Andrade* v. *United States,* 16 F. 2d 776; *United States* v. *Jordan,* 22 F. 2d 702; *United States* v. *Mayer,* 22 F. 2d 827.

[14] Compare the cases holding that when an omission to act is the crime, the venue is the jurisdictional locality where the act should have been performed, e. g., *Regina* v. *Milner,* 2 Car. & K. 309, 175 Eng. Rep. 128; *New York Cent. & H. R. R. Co.* v. *United States,* 166 F. 267, 269; *State* v. *Yocum,* 182 Ind. 478, 106 N. E. 705; *State* v. *Brewster,* 87 N. J. L. 75, 93 A. 189; *State* v. *Peabody,* 25 R. I. 544, 56 A. 1028; 1 Bishop, New Criminal Procedure (2d ed.) § 53 (5). See *United States* v. *Lombardo,* 241 U. S. 73; *Rumely* v. *McCarthy,* 250 U. S. 283; *United States* v. *Van Den Berg,* 139 F. 2d 654, 656.

[15] *Haas* v. *Henkel,* 216 U. S. 462.

[16] Cf. authorities cited in note 14.

In this case, however, the problem is not difficult. For the duty was clear and precise, as were the place of performance and the place of refusal to perform; and the two places were identical.

The duty was to submit to induction. In the facts here, it was to take the oath. The place where this was required to be done was Fort Lewis and nowhere else. The place where appellee refused, flatly and unequivocally, to take it and thereby to submit to induction was likewise Fort Lewis. Until that refusal, as the Government says, he had violated no provision of the law or of any regulation. It was his right under the *Falbo, Billings* and *Estep* decisions to exhaust the entire administrative process up to the final step before induction, as he did. Then for the first time he declined to go forward as he was required to do. This refusal was his crime. It took place at Fort Lewis. The District Court accordingly had jurisdiction.

We express no opinion concerning whether appellee's continued failure, after returning to Spokane, to take the oath would have conferred jurisdiction within that district under the idea of continuing offense. Nor need we express views concerning any other situation not involved in the facts, for example, such as would be presented on the present indictment if appellee had never left Spokane or reported at Fort Lewis.

The judgment is

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.