Herman KROGMANN and Emil Klauss, Appellants,

v.

UNITED STATES of America, Appellees.

No. 12268.

United States Court of Appeals Sixth Circuit.

Aug. 16, 1955.

Samuel Goldstein, Pittsburgh, Pa. (Charles J. Margiotti, Margiotti & Casey, Pittsburgh, Pa., Loyal S. Martin, Cincinnati, Ohio), on the brief, for appellants.

Thomas Stueve, Asst. U. S. Atty., Cincinnati, Ohio (Hugh K. Martin, U. S. Atty., Thomas Stueve, Richard H. Pennington, Asst. U. S. Attys., Cincinnati, Ohio), on the brief, for appellee.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

Appellants, Herman Krogmann and Emil Klauss, were tried and convicted under two indictments charging them with bribing an officer in the United States Air Force, in violation of Section 201, Title 18 U.S.Code, and with conspiring between themselves and with the Air Force Officer to commit such offense, in violation of Section 371, Title 18 U.S. Code and Section 202, Title 18 U.S.Code. The cases were heard together, and their various appeals have been consolidated in this Court.

Indictment No. 8526, consisting of two counts, charged in Count 1 that on or about July 23, 1953, appellant Krogmann gave the sum of $3,500 to Donald Arthur Krueger, a First Lieutenant in the U. S. Air Force, assigned as Chief, Readjustment Section and Plant Clearance Officer with the Air Force Plant Representative's Office, General Electric Plant, Evendale, Ohio, and acting on behalf of the United States by authority of the United States Air Force, with intent to influence the decision of Krueger in making disposal sales of property which had been declared surplus to the needs of the U. S. Air Force, which by law were brought before Krueger in his official capacity. Count 2 charged appellants Krogmann and Klauss with making another payment of $1,500 to Krueger on or about August 18, 1953 for the same purpose.

Indictment No. 8528 charged Krueger and the appellants Krogmann and Klauss with conspiring between November 1, 1952 and December 3, 1953 to violate Section 202, Title 18, U.S.Code, by having Krueger receive from them compensation for services in the sales of property which was declared surplus to the needs of the United States Air Force which were before Krueger in his official capacity, said services consisting of securing an award of a sale to Krogmann and Klauss of surplus material identified as Negotiated Sale No. 20. The indictment alleged four overt acts in furtherance of the conspiracy. In this indictment Krueger was also separately indicted under Counts 2 and 3 which charged the substantive offenses under Section 202, Title 18, U.S.Code. Krueger pleaded guilty to all three counts under indictment No. 8528.

At the close of the Government's evidence and again at the close of all the evidence, appellants moved for judgment of acquittal, which motions were overruled. These motions were based upon the claim that the Government's evidence failed to show that Krueger had any official authority to act in the transaction complained of, which was necessary to prove the commission of the offense. Blunden v. United States, 6 Cir., 169 F.2d 991.

The Government's evidence showed the following facts: Krueger was a First Lieutenant in the United States Air Force stationed during the time in question at the General Electric Plant, Evendale, Ohio, where he served as Chief, Readjustment Section and Plant Clearance Officer with the Air Force Plant Representative's Office. John T. Kearney, a civilian employee of the Air Force, stationed at the G. E. Plant, served as a contracting officer and assigned Krueger to certain contracts under him. As a plant clearance officer it was Krueger's responsibility to clear the plant of excess and surplus material. Krueger had no power to declare property surplus. He had authority to canvass the market for prospective buyers for surplus property and to negotiate sales under the sum of $1,000 without further approval. If the sales were over $1,000 he was required to secure the approval of the Property Disposal Board and of the contracting officer. By letter of March 4, 1952, Kearney appointed Krueger as his representative and authorized and directed him to dispose of the inventory located at the ANP Project, Oak Ridge, Tennessee, in accordance with applicable rules and regulations.

Krueger first met the appellants in the late summer of 1952 at the G. E. Plant at Evendale, Ohio, where they were the successful bidders with respect to some surplus property there. In July 1953,

Krueger went to Oak Ridge to show prospective customers available surplus. Krogmann met Krueger there on July 8, 1953, and inspected certain material, an inventory of which had previously been furnished him. Krueger testified that Krogmann was very anxious to get the material and asked when the award would be made and when his firm could start moving the material. Krueger also testified that he orally recommended to Kearney an alleged offer by the Euclid Foundry and Equipment Company of Cleveland, Ohio, of which Krogmann and Klauss were officers, of $40.00 per ton; that Kearney approved the recommendation and told him to go ahead and award the contract, which he did.

Krueger testified that Krogmann called him by phone from Cleveland on July 23rd and told him he was flying to Cincinnati; that he met him at the airport in Northern Kentucky where Krogmann asked to be driven to the Terrace Plaza Hotel in Cincinnati; and that during the ride from the airport to downtown Cincinnati, Krogmann gave Krueger $3,500 in $100 bills, telling him that it was part of the $5,000 which he had originally told Krueger he would give him for the award of the Oak Ridge contract. Krueger told Krogmann that he intended to purchase a car with the money. Krogmann asked Krueger not to put the money in the bank, but to place it in a safety deposit box, which, however, Krueger did not do.

On August 18, 1953, in accordance with previous arrangements by phone, Krueger met Krogmann and Klauss at the Greater Cincinnati Airport and drove them to a restaurant in Northern Kentucky to lunch. Krueger testified that he had prepared an undated letter of an award to the Euclid Company, and that enroute to the restaurant he gave the appellants the original and copies. For his own records, Krueger arbitrarily designated the transaction as Negotiated Sale No. 20, although actually there was no such negotiated sale. While at the restaurant, Klauss excused himself to make a telephone call and in his absence,

Krogmann handed Krueger $1,500 in $100 bills saying, "Here is the rest of the $5,000 which we—which I promised you. And if we make any money on this we will give you an additional $5,000." The proposed sale was never consummated, and following an FBI investigation these indictments were returned.

■ Appellants denied that Krueger had given them the alleged typewritten letter of award to the Euclid Company and much of Krueger's other testimony. It was admitted that the two payments of $3,500 and $1,500 had been made to Krueger on the dates referred to, but appellants denied that it was given for the purpose of securing an award. Krogmann testified that shortly after July 8, 1953 Krueger telephoned him that his wife was pregnant and he was badly in need of money, and requested a loan of $5,000. He advised Klauss of the request. After discussing the possibility of having the company make the loan, and being advised by the company's attorney that it could not be done, they agreed to make the loan to Krueger from their personal funds. Krogmann claimed that he made such loans to other parties in the past without interest, without evidence of obligation and without collateral; that when he gave Krueger the $3,500 he asked for a note which Krueger promised to give, and that he expected to receive the note and to be repaid by Krueger as soon as he could do so. There was additional evidence by appellants, which it is unnecessary to give in detail, contradicting Krueger's testimony and supporting their contention that the $5,000 was actually a loan to Krueger, and that there was no intent on their part to influence Krueger in making disposal sales of property at Oak Ridge to them. However, this presented a question of fact for the jury. In our opinion, the Government's evidence was sufficient to take the case to the jury on this issue.

■■ This case is materially different from Blunden v. United States, 6 Cir., 169 F.2d 991, 994, upon which appellants strongly rely. That case rested upon the fact that the civilian employee of the

United States Army, had no authority to act at all in the sale of the Government property therein involved. In that case, the Government employee did not make a decision or recommendation favorable to appellants in a matter under his jurisdiction, but actually stole the property from the Government and turned it over to purchasers for resale and for a division of the profits. We agree with the contentions of appellants, as there pointed out, that the crux of the offense is the intent to influence an official decision, that the statute requires that the employee be acting for the Government in an "official function," and that the matter in which his decision is to be influenced be " 'before him in his official capacity.' " However, the statute refers to the "decision or action" of the Government employee, and is applicable to a situation where the advice and recommendation of the Government employee involved would be influential in securing the decision desired by the persons offering the bribe, even though the employee did not have the authority to make the final decision. Rembrandt v. United States, 6 Cir., 281 F. 122; Browne v. United States, 6 Cir., 290 F. 870; Cohen v. United States, 6 Cir., 294 F. 488; Hurley v. United States, 4 Cir., 192 F.2d 297. The evidence was sufficient to show the necessary authority in Krueger to make a recommendation favorable to appellants in the disposal of surplus property at the Oak Ridge plant, and that the appellants intended to influence his "action" in disposing of such property.

Closely linked with the above question of Krueger's authority to act in the matter is appellants' further contention that the evidence was insufficient to prove that the property included in the so-called Negotiated Sale No. 20 was surplus property to the Air Force, and that Krueger had no authority to act with respect to that particular property although he may have had authority to act with respect to other property which had been declared surplus. Although the evidence may not have shown specifically that the particular property included in Negotiated Sale No. 20 had been declared surplus, there was testimony from Kearney that the property at Oak Ridge was surplus property, having been declared so by the General Electric Company when it moved from Oak Ridge to the General Electric plant in Ohio, and that the property with which Krueger dealt had been declared surplus. Inventories of the property which was for sale had been sent to prospective purchasers, including the appellants. The testimony as a whole, with the reasonable deductions therefrom, was, in our opinion, sufficient to take the case to the jury on this issue.

In addition, the offense charged was complete upon the payment of the money to Krueger with the intent to influence his action with respect to the sale of surplus property. The evidence was sufficient to show that appellants were interested in the surplus property at Oak Ridge and made the payments for the purpose of influencing Krueger's action with respect to such property. Whether the attempt was successful or what the officer did in attempting to perform his side of the bargain are accordingly immaterial. Wolf v. United States, 6 Cir., 292 F. 673, 675; Curtis v. State, 113 Ohio St. 187, 191, 148 N.E. 834; Underhill on Criminal Evidence, 4th Edition, Sec. 715. For this reason appellants' contention that there actually was no Negotiated Sale No. 20 of property specifically shown to be surplus is without merit.

Each of the appellants introduced five character witnesses in his behalf. In the Government's opening summation to the jury, counsel belittled the value of character testimony, stating in substance that practically any defendant can find somebody that would say a good word for him. In appellants' summation to the jury counsel stressed the importance of character testimony and called attention to the failure on the part of the Government to contradict the testimony so given. After referring to the investigating facilities of the FBI he argued

**226**

to the jury—"If they had any evidence that at any other time any of these defendants had committed a dishonest act or had been unfair with their fellow man, they could have cross examined those witnesses by asking them: 'Did you ever hear it said—' ". The trial judge interrupted at that point and stated "That isn't the fact, as you well know. Now, if you will just consider what you said the Government could have done, that isn't the law." A colloquy followed between Court and counsel, which developed the fact that the Court probably misunderstood the argument to mean that the Government could have introduced in the presentation of its case evidence of other offenses, while counsel attempted to explain that such was not the purport of the argument. Counsel asked for a ruling. Without giving a specific ruling the Court said—"I just want to say to you that it's taking in too much territory," and a few sentences later added—"I say, you can go on from here; and if you want to take an exception to the interruption, all right." Counsel thereupon resumed his argument to the jury, calling attention to the failure of the Government to produce evidence showing that the appellants did not have a good reputation, together with the inference to be drawn in appellants' favor by reason of such failure.

■ Appellants claim that the Court's interruption of counsel's argument and ruling as above set out constituted prejudicial error. The trial judge was correct in his understanding of the general rule that it was not permissible for the Government to introduce evidence of prior criminal offenses in the presentation of its case in chief. However, he was incorrect in concluding that counsel was making a contrary contention in his closing argument to the jury. On the contrary, counsel was attempting to argue to the jury what we believe is settled law, that when a defendant in a criminal case introduces evidence tending to prove his good reputation he throws open the entire subject and prosecution may cross-examine the defendant's character

witnesses to test their credibility, which cross-examination may include questions as to their knowledge of prior criminal offenses if such offenses actually existed. Michelson v. United States, 335 U.S. 469, 477–479, 69 S.Ct. 213, 93 L.Ed. 168; Malatkofski v. United States, 1 Cir., 179 F.2d 905, 913; United States v. H. Wool & Sons, Inc., 2 Cir., 215 F.2d 95, 98–99. However, any error in this respect was corrected, or any prejudice resulting from the error was avoided, by allowing counsel to thereafter resume the argument and to present to the jury the same point which he was trying to make when previously interrupted by the Court.

■ In the cross examination of Krueger, testifying for the Government, he was asked if he had received any other money in addition to the amounts he had admitted receiving by pleas of guilty to several indictments, including the one in these cases. He declined to answer on the ground that it might tend to incriminate him, which position was sustained by the trial judge. Appellants contend that Krueger, having voluntarily appeared as a witness for the Government, and having pleaded guilty to indictments charging him with accepting bribes, had waived his constitutional privilege against self-incrimination, and that the trial court's ruling was prejudicial error. We do not agree. If the witness had accepted other bribes he was subject to prosecution under additional indictments. The pleas of guilty to indictments already returned waived the privilege with respect to those offenses, but we do not construe it as being a blanket waiver with respect to other offenses that might be charged against him later. In our opinion, United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376; Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 and Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, relied upon by appellants, do not sustain their contention. On the contrary, it seems to be recognized in Rogers v. United States, supra, that although privilege has been waived with respect to certain questions it still exists

when additional questions present a reasonable danger of further crimination.

Both indictments allege venue in the Southern District of Ohio, Western Division. Appellants contend that the evidence failed to establish that fact, which defect was raised by their motions to dismiss at the close of the Government's evidence and at the close of all the evidence. It is their contention that they gave the $3,500 to Lieutenant Krueger on July 23rd in Covington, Kentucky; that the second payment of $1,500 was made to him on August 18th at a restaurant in Northern Kentucky; and that the correct venue of the action was the Northern District of Kentucky rather than the Southern District of Ohio.

With respect to the first payment of $3,500, appellant Krogmann testified that he gave it to Lieutenant Krueger under a traffic light on the street before he left Covington, Kentucky. However, Lieutenant Krueger testified that it was paid to him after they crossed the River and were in Cincinnati, Ohio. With respect to the second payment of $1,500 the evidence is uncontradicted that it occurred at the restaurant in Northern Kentucky. The appellants requested in indictment No. 8526 an instruction with respect to each count of the indictment that if the jury should find that the bribery as charged therein occurred in the State of Kentucky then the jury's verdict should be not guilty. The trial judge refused to give this instruction. On the contrary, he was of the opinion that from the uncontradicted evidence venue was properly proven in the Southern District of Ohio and so instructed the jury. This ruling was based on Section 3237, Title 18, U.S.Code, which provides that any offense against the United States begun in one district and completed in another may be prosecuted in any district in which the offense was begun, continued or completed. He considered the alleged offense of bribery as being a continuing one, including the acts leading up to it, a number of which occurred in the Southern District of Ohio, as well as the actual act of transferring the money. The correctness of his ruling necessarily depends upon this construction of the alleged offense.

We are of the opinion that the District Judge was incorrect in construing the offense as a continuing one. The statute refers to a specific act, namely the *giving* of money to a Government official. Although considerable planning and preparation may precede the actual transfer of the money, we are of the opinion that the essence of the offense is the actual transfer of the money at the time and place where it occurs, accompanied by the unlawful intent. Preparations for the commission of the crime are not parts of the crime. Reass v. United States, 4 Cir., 99 F.2d 752; United States v. Borow, D.C.N.J., 101 F.Supp. 211; United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897.

The Government in support of its contention to the contrary relies upon Ladner v. United States, 5 Cir., 168 F.2d 771; United States v. Cohen, 3 Cir., 197 F.2d 26, and Goodloe v. United States, 88 U.S.App.D.C. 102, 188 F.2d 621. Both the Ladner and Cohen cases involved conspiracies. In such cases it is well settled that since a conspiracy is a continuing crime, jurisdiction exists either where the conspiracy was entered into or where any overt act was committed. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114; Costal v. United States, 6 Cir., 13 F.2d 843. The Goodloe case involved an attempt to bribe. The Court was of the opinion that the attempt to bribe included certain overt acts over a period of time, some of which occurred in the district in which the indictment was returned. We think the offense involved in that case is materially different from the one charged in this case, namely, the actual giving of money at a time and place to an officer of the United States. The appellants were entitled to the requested instructions with respect to Count No. 1 of indictment No. 8526. With respect to Count No. 2 in indictment No. 8526, the motion to dismiss should have been sustained. The issue was not raised in in-

228

dictment No. 8528 which charged a conspiracy.

▮▮▮▮▮ Appellants also complain of the ruling of the District Judge in excluding testimony of third parties about similar loans made by one or other of the appellants to them in the past without the execution of a note, without interest and without collateral, offered for the purpose of showing that it was not unusual for the appellants to make loans of that character. The District Judge was of the opinion that the relationship between the parties and the circumstances under which the loans were made were materially different from the relationship and circumstances in the present case. We are of the opinion, however, that the circumstances were sufficiently similar to make such testimony relevant and competent, with the distinguishing features going to the weight of the testimony. Prior transactions on the part of a defendant in a criminal case, similar to the one involved in which the element of intent is an issue, have a bearing upon the issue of intent and are admissible in evidence for the purpose of proving or disproving the necessary intent. Wood v. United States, 16 Pet. 342, 360, 10 L.Ed. 987; Federal Trade Commission v. Cement Institute, 333 U.S. 683, 705, 68 S.Ct. 793, 92 L.Ed. 1009; N.L.R.B. v. National Seal Corp., 2 Cir., 127 F.2d 776, 778; State ex rel. Attorney General v. Hasty, 184 Ala. 121, 63 So. 559, 50 L.R.A.,N.S., 553.

▮▮▮▮ During the course of the trial, an article was published in the Cincinnati Times Star, a daily newspaper of wide circulation, which referred to testimony given in the trial by Klauss, and which carried the headline in bold type— "Part in bribe admitted." The article itself was short, was a fair summary of the testimony on the particular point involved, and did not sustain the headline. Appellants moved for a mistrial. The District Judge asked the jurors if any of them had read it. Two jurors replied they had. During colloquy with counsel, the District Judge read to the jury the headline and admonished the jurors that they were to decide the case solely on the evidence given from the witness stand and were not to be influenced one way or the other by what they read in the newspapers. Counsel for appellants, upon being asked by the Court if he would suggest some additional instructions, replied that he thought the action of the Court in reading the objectionable headline to the jury was incurable, and renewed his motion for a mistrial. The District Judge then read the entire article to the jury and instructed them again to decide the case upon the evidence given from the witness stand and not to be influenced by the article in the newspaper, pointing out that no one in the court room had any control over the newspapers. He then asked the two jurors who had read the article if they would be influenced by what they had read in the paper. The two jurors answered they would not. The District Judge then directed that the trial proceed, and upon being asked by counsel for a ruling, overruled the motion for a mistrial, to which ruling counsel excepted.

▮▮▮▮ Unfavorable publicity to a defendant given in newspapers about a pending jury trial is not necessarily grounds for setting aside a verdict, but under certain circumstances may result in prejudice to a defendant so as to cause a mistrial. Generally, an incorrect, unfavorable report of the evidence presented against a defendant on a material issue, which comes to the attention of a juror or jurors during the pendency of the trial raises a rebuttable presumption that the rights of the defendant have been prejudiced. The District Judge should ascertain if the report has come to the attention of a juror and if so, take the necessary steps to rebut such presumption, and if not convinced that the presumption has been rebutted, declare a mistrial. Briggs v. United States, 6 Cir., 221 F.2d 636; Marson v. United States, 6 Cir., 203 F.2d 904; Harrison v. United States, 6 Cir., 200 F. 662, 669. The District Judge attempted to perform that duty in making inquiry of the ju-

rors if the article had come to their attention. But, after learning that two of the jurors had seen it, we are of the opinion that he erred in reading the objectionable headline to all the jurors, and in later obtaining assurances from only two of them, that no prejudice had been created. Stone v. United States, 6 Cir., 113 F.2d 70, 77; Briggs v. United States, supra; Marson v. United States, supra.

Appellants also complain of the ruling of the District Judge in refusing to permit them to testify that in giving the money to Krueger they did not intend to influence his decision in making disposal sales of the property in question. The Government contends that the specific questions asked of the appellants did not raise this issue. We are of the opinion that they did. There is some question whether the point was sufficiently presented by an avowal of what the witnesses would say. However, for the purposes of a new trial it can be stated that the rule is well settled that in a criminal proceeding where the intent of the defendant is in issue the defendant may testify as to what his intent was. Crawford v. United States, 212 U.S. 183, 202–203, 29 S.Ct. 260, 53 L.Ed. 465; Bentall v. United States, 8 Cir., 262 F. 744, 746; Haid v. United States, 9 Cir., 157 F.2d 630; Haigler v. United States, 10 Cir., 172 F.2d 986; Collazo v. United States, 90 U.S.App.D.C. 241, 196 F.2d 573, 581.

We find it unnecessary to discuss in detail other contentions of the appellants. They deal mainly with the instructions of the District Judge to the jury and contend that in several instances well-recognized principles of criminal law were violated. Appellants correctly argue that it was the duty of the trial judge to instruct the jury with reference to the appellants' theory of the case; to point out to the jury the necessity on the part of the Government of proving beyond a reasonable doubt each of the elements constituting the offense charged, including in this case the element that Krueger received the money in a matter which was before him "in his official capacity"; that it was not necessary that the jury convict or acquit both defendants, but that separate and alternate verdicts as to each defendant were permissible under the four counts which the jury was considering. It is of course also a fundamental principle that the trial judge in his conduct of the trial should be fair and impartial to both the Government and to the defendants, and should not by undue participation in his cross examination of witnesses or unwarranted criticism of counsel indicate to the jury what he thought their verdict should be. Although the trial judge actively participated in the examination of certain witnesses, in our opinion, a consideration of the transcript of the evidence as a whole and of his instructions to the jury in their entirety does not convince us that any of these principles were transgressed. In any event, the criticism which appellants make in these respects on the present review will no doubt be avoided in the retrial of these cases.

The judgments of the District Court are reversed and the cases remanded to that Court for new trials under Count 1 in indictment No. 8526 and Count 1 in indictment No. 8528, and for the entry of an order sustaining appellants' motion to dismiss Count 2 under indictment No. 8526.