**UNITED STATES of America, Appellant,**

v.

**Paul Deemer JOHNSTON.**

**UNITED STATES of America, Appellant,**

v.

**John SOKOL.**

**Nos. 11620, 11621.**

United States Court of Appeals Third Circuit.

Argued Nov. 2, 1955.

Decided Dec. 1, 1955.

Rehearing Denied Jan. 4, 1956.

W. Wilson White, U. S. Atty., Philadelphia, Pa. (Frank K. Tarbox, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellant.

Hayden C. Covington, Brooklyn, N. Y. (Michael Hahalyak, Pittsburgh, Pa., on the brief), for appellees.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

These two cases raise the question of the proper venue in a prosecution for disobedience of the provisions of the Universal Military Training and Service Act.[1] The facts are simple and undisputed. The two defendants registered in accordance with the draft law and were classified I-O. Each was directed by his local board to appear before the board to be assigned to "civilian work contributing to the maintenance of the national health, safety, or interest * * *."[2] Each appeared before his local board in accordance with the instructions received in SSS Form No. 153. Sokol was assigned to hospital work at Philadelphia State Hospital, Philadelphia, Pennsylvania, and Johnston to the Norristown State Hospital, Norristown, Pennsylvania. Both hospitals are located in the eastern district of Pennsylvania. Each told his local board that he would not obey the order of assignment and each never entered the eastern district to do the work assigned. Both at all times resided in the western district of Pennsylvania and their local boards were located in this district. Both registrants were indicted in the eastern district of Pennsylvania. The district court dismissed each indictment for lack of "venue-jurisdiction."[3]

Our first problem is to find out just what offense these men are charged with. The indictments each refer to title 50 U.S.C.A.Appendix, sections 456 and 462. The Sokol indictment refers more particularly to section 456(j). The references to these two sections of the statute appear both at the head and in the body of the indictments. Section 456(j) has as its subject matter the treatment of those who by reason of religious training and belief are conscientiously opposed to participation in war. Provision is made for the manner in which this claim shall be presented. There appears in the section the authorization to the board to assign a registrant found to be conscientiously opposed even to noncombatant service to work of national importance. It states that one who "knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title, to have knowingly failed or neglected to perform a duty required of him under this title."[4]

In section 462 (section 12 of the act) the conduct which is, among others, subject to sanction, is in any manner to "knowingly fail or neglect or refuse to perform any duty required of him under * * * this title * * *."[5]

It will be noted that paragraph (j) above quoted carries the words "fails or neglects." Section 462 adds the word "refuse." Did these registrants "refuse" to obey orders in the western district in such way as to make them responsible for violation of the statute under section 462? It is agreed that they there stated to their respective

1. 62 Stat. 604, June 24, 1948, as amended, 50 U.S.C.A.Appendix, §§ 451–473.

2. 65 Stat. 86 (1951), 50 U.S.C.A.Appendix, § 456(j).

3. United States v. Johnston, D.C.E.D.Pa. 1955, 131 F.Supp. 955.

4. 65 Stat. 86 (1951), 50 U.S.C.A.Appendix, § 456(j).

5. 62 Stat. 622 (1948), 50 U.S.C.A.Appendix, § 462(a).

boards that they were not going to obey their assignment for service. We do not need to answer the question just stated because the defendants are not being prosecuted in the western district for their defiance of the board. They are indicted, instead, in the eastern district. It was in the eastern district where they failed to appear to do the work assigned to them. And it is this failure which constitutes the offense, if any, in the eastern district. Do the indictments charge this offense?

As to Sokol the answer is clear. He was indicted for neglecting "to perform a duty * * * in that he failed to report to the * * *" assigned hospital. Johnston, on the other hand, was charged with neglecting "to perform a duty * * * in that he failed and refused to obey an order * * * directing him to report * * *" at the place of assignment. As we construe this indictment, it charges Johnston with, among other things, failing to report to the specified hospital as ordered. That part of the indictment which charges him with possible offenses other than failing to report can be disregarded as surplusage.[6]

█ It is apparent that the failure to report to the place of assignment is an indictable offense under the act. Section 462 makes it an offense to fail to perform a duty imposed by authority of the statute. Section 456(j) poses no obstacles. Indeed it raises the board's order to report to the level of a duty under section 462, at least to the extent that "failure" or "neglect" to obey the order is considered to be a violation of such a duty. On the other hand, we do not believe that the Sokol indictment is inadequate in that the board's order is not mentioned. The duty it created is. But where is the offense of failure to report consummated?

█ Now we have reached the interesting substantive question of criminal law. It is well established that one does not have to be physically present in a state to be guilty of a criminal offense there. The standard illustration, familiar to every law student, is that of shooting across a state boundary line and hitting a victim in the second state. The offense is complete where the fatal force hits the victim and the defendant may be prosecuted for homicide there if jurisdiction can be obtained over his person.[7] The same theory has been applied in both torts and crimes with regard to dissemination of defamatory words,[8] the loss sustained to one who relies upon false representations given to him by another from another state,[9] the injury resulting when canned food imported and distributed from one state causes harm in another,[10] and the attempt by letter mailed in one state to induce a public employee in another to violate his official duties.[11]

6. Cf. Ford v. United States, 1927, 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793.

7. State v. Hall, 1894, 114 N.C. 909, 19 S.E. 602, 28 L.R.A. 59; United States v. Davis, 1837, 25 Fed.Cas. p. 786, No. 14,932; See also Restatement, Conflict of Laws, Note § 377, ill. 1 at 456 (1934) (same principle applicable in torts).

8. Torts: Restatement, Conflict of Laws, Note § 377, ill. 7 at 457 (1934). Crimes: Sachs v. Government of the Canal Zone, 5 Cir., 1949, 176 F.2d 292, 297; State v. Piver, 1913, 74 Wash. 96, 132 P. 858.

9. Torts: Restatement, Conflict of Laws, Note § 377, ill. 5, 6 at 457 (1934). Crimes: Updike v. People, 1933, 92 Colo. 125, 18 P.2d 472; State v. De-

vot, 1925, 66 Utah 319, 242 P. 395, 43 A.L.R. 532; but see Commonwealth v. Schmunk, 1903, 22 Pa.Super. 348, affirmed, 1904, 207 Pa. 544, 56 A. 1088. The conflict in the crimes cases stems from the fact that the substantive offense requires proof of the receipt, and not merely the loss, of property.

10. Torts: Hunter v. Derby Foods, Inc., 2 Cir., 1940, 110 F.2d 970, 133 A.L.R. 255.

11. Crimes: In re Palliser, 1890, 136 U.S. 257, 10 S.Ct. 1034, 34 L.Ed. 514. Referring to U.S.Const. art. III, § 2, cl. 3 and U.S.Const. Amend. VI, the Court said that "the right thereby secured is not a right to be tried in the district where the accused resides, or even in the

These defendants, however, did no act nor did they follow any course of conduct in the eastern district of Pennsylvania. What is being complained of is their failure to do, not what they did. This case raises the point left unanswered in United States v. Anderson, 1946, 328 U.S. 699, 706, 66 S.Ct. 1213, 90 L.Ed. 1529. But we think the answer is pretty clear on the basis of established legal rules applicable to other cases of omissions which have been made crimes. It is true, and no one disputes, that the Constitution (Sixth Amendment) requires that a person shall be tried in a district where the crime shall have been committed.[12] But it is also clear that where there is a legal duty to act and the failure to do that act is a criminal offense, the courts consider the criminal offense to take place where the defendant failed to perform that which the law required of him. This is illustrated by a variety of decisions in different fact situations. Here are some of the instances: the failure of an individual doing business in one county to surrender himself at a district court in another in response to a fiat in bankruptcy,[13] the neglect of a father residing in one county to support his children residing in another,[14] the failure of a witness to appear before a legislative committee in obedience to a summons,[15] the failure to file necessary reports with the appropriate governmental authorities in the District of Columbia concerning (1) the custody of enemy property and the indebtedness of alien enemies,[16] (2) an alien woman [17] and (3) rates and charges of a railroad,[18] and the failure to file tax returns with the Collector in the appropriate internal revenue district.[19]

We see no reason why this well established line of authority should not be applied in these selective service cases. We think what is being prosecuted here is the failure of these defendants to do what the law required them to do. Suppose these young men, after defying the local board in their respective communities, had within the period allotted for travel changed their minds and reported for their hospital duty at the places assigned on the given day. There certainly would be no offense of failure to report committed. Whether a crime or not, the prior refusal would not prevent compliance. Likewise in the case before us the prior refusal was neither the failure to report nor did it preclude the possibility of committing this offense. We think it clear that here this offense was committed at the time and place the act should have been performed. Such a view has been expressed by federal courts applying the draft law.[20]

district in which he is personally at the time of committing the crime, but in the district 'wherein the crime shall have been committed.'" Id., 136 U.S. at page 265, 10 S.Ct. at page 1036.

12. Ibid.

13. Regina v. Milner, 2 Car. & K. 309, 175 Eng.Rep. 128 (1846).

14. State v. Peabody, 1904, 25 R.I. 544, 56 A. 1028; State v. Yocum, 1914, 182 Ind. 478, 106 N.E. 705.

15. State v. Brewster, 1915, 87 N.J.L. 75, 93 A. 189.

16. Rumely v. McCarthy, 1919, 250 U.S. 283, 39 S.Ct. 483, 63 L.Ed. 983.

17. United States v. Lombardo, 1916, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897.

18. New York Cent. & H. R. R. Co. v. United States, 2 Cir., 1908, 166 F. 267.

19. Bowles v. United States, 4 Cir., 1934, 73 F.2d 772, 774, certiorari denied, 1935, 294 U.S. 710, 55 S.Ct. 506, 79 L.Ed. 1245; United States v. Commerford, 2 Cir., 64 F.2d 28, 32, certiorari denied, 1933, 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502.

20. United States v. Van Den Berg, 7 Cir., 1944, 139 F.2d 654, 656; Humes v. Pescor, 8 Cir., 1945, 148 F.2d 127, 128; Jones v. Pescor, 8 Cir., 1948, 169 F.2d 853, 855; United States v. Sutter, D.C. S.D.Cal.1954, 127 F.Supp. 109, 115; contra United States v. Patteson, D.C.D. Kan.1955, 132 F.Supp. 67; United States v. Chiarito, D.C.D.Or.1946, 69 F.Supp. 317, 322 (alternative holding). Penor v.

There is one further point which has to do with the Criminal Appeals Act, 18 U.S.C. § 3731 (1952). By that statute an appeal may be taken on behalf of the United States to the Supreme Court of the United States from a judgment of a district court dismissing an indictment where the judgment "is based upon the invalidity or construction of the statute upon which the indictment * * * is founded." By the same section of the code an appeal may be taken by the United States to a court of appeals from a judgment of a district court setting aside or dismissing any indictment "except where a direct appeal to the Supreme Court of the United States is provided * * *." Under the statute, then, we do not have authority to hear the appeal if it is one which is appealable directly to the Supreme Court.

In United States v. Jones, 1953, 345 U.S. 377, 73 S.Ct. 759, 97 L.Ed. 1086, the Court sent back to a court of appeals a case where appeal had been taken directly to the Supreme Court and where, in the view of that Court, there was a question of examining and construing the information. This the Supreme Court said was not properly a question for it but for the court of appeals instead. We think that case governs this. As set out above, there is a question of construing the indictments in this case to see what is being charged. And the only statutory question is whether such charges can be brought under the act, a question primarily involving the adequacy of the indictment rather than the construction of the statute. The case is, therefore, a proper one for consideration at this level and this consideration we have endeavored to give it.

The judgment of the district court will be reversed and the case remanded.

United States, 9 Cir., 1948, 167 F.2d 553, is not in point. There the crime charged was desertion of the original

camp rather than failure to report to the one newly assigned.