**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Earl Patrick O'DONNELL, Defendant-Appellant.**

**No. 74–1949.**

United States Court of Appeals, Sixth Circuit.

Feb. 17, 1975.

Certiorari Denied June 2, 1975.

See 95 S.Ct. 2400.

Eugene C. Gaerig, Memphis, Tenn. (Court appointed), for defendant-appellant.

Thomas F. Turley, U. S. Atty., Larry E. Parrish, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before EDWARDS, McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal raises the question of the proper venue for prosecution of the offense of endeavoring to obstruct justice as defined by 18 U.S.C. Sec. 1503.[1] Upon a jury verdict of guilty of this offense, appellant was sentenced to five years imprisonment. Appellant was free on bond in a mail fraud case in the Western District of Tennessee where an indictment was returned against him in the same district on June 11, 1973, charging that appellant did "endeavor to obstruct and impede the due administration of justice . . . seeking to influence the person and testimony of Sherman Roy Dean an unindicted co-conspirator and government witness in the pending mail fraud case in order to eliminate the testimony of Dean at the trial" of the mail fraud case. The indictment stated that the offense occurred in the Western District of Tennessee and in other judicial districts. A subsequently filed Bill of Particulars stated that the only other district in which the offense

---

1. 18 U.S.C. Sec. 1503 reads as follows:

§ 1503. *Influencing or injuring officer, juror or witness generally*

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commis-

sioner, or other committing magistrate, or on account of his testiying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

As amended Oct. 17, 1968, Pub.L. 90–578, Title III, § 301(a)(1), (3), 82 Stat. 1115.

occurred was the Northern District of Texas in the city of Dallas.

On the ground that there existed so great a prejudice that appellant could not obtain a fair trial in Tennessee, appellant filed a motion to transfer the case to the Northern District of Texas pursuant to Rule 21 of the Federal Rules of Criminal Procedure. Alternatively, it was alleged that proper venue was in the Northern District of Texas and that the indictment should be transferred to that district pursuant to Rule 21(b).

Appellant also filed a motion to dismiss the indictment. One ground of the motion was that the indictment did not allege the requisite facts to establish venue. Following a hearing, the district court overruled all defense motions.[2]

The government produced testimony at trial that in April of 1973 Gene Victor Poteet, a pilot with Texas International Airlines, was approached by appellant in a bar near the Dallas airport and in the course of the ensuing conversation stated to Poteet "I need to kill Billy Wiseman and Sherman Dean."[3] Appellant explained that he could take care of Wiseman in the Dallas county jail but that he did not want to be in Memphis when Dean was killed there.

Appellant and Poteet had a number of other conversations regarding this subject. Poteet then contacted certain federal agents with whom he had a working relationship as an informer. As a result of Poteet's tip, a meeting was arranged between appellant and Special Agent Lloyd Grafton of the Alcohol, Tobacco & Firearms Bureau. In this meeting, Grafton was to pose as a murderer for hire from Houston. O'Donnell did not appear for the arranged meeting. Grafton then contacted him by telephone, explaining that he had come from Houston for the meeting. A second meeting was then agreed upon. For this meeting Grafton arranged for electronic surveil-lance. The result was that the ensuing conversation between Grafton and O'Donnell was recorded and the tape of the conversation was introduced by the government at trial together with Grafton's testimony.

During the conversations Grafton, in his undercover role, offered his services to O'Donnell as a hired killer of Dean. It was agreed that Grafton would go to Memphis and kill Dean to eliminate his testimony against O'Donnell in the pending mail fraud case. The fee for Grafton's services was set at $2,500 plus $100 to purchase the gun to be used in the killing. In a subsequent telephone conversation, Grafton stated that he needed to return to Houston in a hurry but that he did want the job. O'Donnell's response was "you've got it." All of these events took place in the Northern District of Texas.

The basic venue requirements for federal criminal prosecutions are found in Article III, Section 2, Clause 3 and in the Sixth Amendment to the Constitution. The guarantee is for a trial in the state and district where the offense was committed. These constitutional provisions are implemented by Rule 18 of the Federal Rules of Criminal Procedure:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. . . .

As the statute under which appellant was charged does not prescribe venue for the offense, it becomes necessary to determine from other sources the place where the statutory offense must be deemed to have been committed. The Supreme Court has held that "the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), *quoting* from United States v. Anderson, 328

---

2. Following the jury verdict of guilty appellant filed a Motion in Arrest of Judgment pursuant to Rule 34 of the Federal Rules of Criminal Procedure. This motion was based on an alleged lack of venue in the Western District of Tennessee and was overruled by the district court.

3. Wiseman and James Maurice Wiley were indicted with O'Donnell in the mail fraud case in Tennessee.

U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1945).

The statute under which the appellant was charged is unique in that the crime proscribed is "constructive" contempt of court. *See* United States v. Essex, 407 F.2d 214 (6th Cir. 1969). The evident purpose of the statute is to protect the administration of justice by the courts or other judicial agencies. To this end, it is made a crime for any person corruptly or by the means prescribed in the statute to obstruct or impede or to endeavor to obstruct or impede the "due administration of justice." Viewed in this light, we are persuaded that the crime may be considered to have been committed under the statute in the district where the administration of justice was intended to be obstructed or impeded. Under this rationale, venue would lie in the Western District of Tennessee in the present case. Deeds or acts performed in Dallas to interfere with a pending criminal prosecution in the Western District of Tennessee may have as great an influence on the administration of justice as acts performed within the boundaries of that district.

In the present case both the court where the case was pending and the witness whose death was sought were located in the Western District of Tennessee. Conceding but not deciding that on the facts of this case venue would lie in the Northern District of Texas, such fact would not preclude venue in the district where the criminal case was pending— the only district in which the efforts of the defendant to obstruct justice could ultimately have been realized or fulfilled.

In Travis v. United States, *supra,* the Supreme Court pointed out that "the constitutional requirement is as to the locality of the offense, and not the personal presence of the offender." Thus, *proper venue for the offense of filing a false affidavit was held to be in Washington, D. C.* where the affidavit was required to be on file and not in Colorado where the affidavit was executed and mailed. The Court reasoned that "venue should not be made to depend on the chance use of the mails . . . ." 364 U.S. at 636, 81 S.Ct. at 361.

Similarly, it has been held, in a prosecution under the Hobbs Act, 18 U.S.C. Sec. 1951, for obstruction of interstate commerce by extortion, that "venue under the statute . . . may be laid in any jurisdiction where commerce is affected," even if all of the conduct related to the extortion occurred outside that jurisdiction. United States v. Floyd, 228 F.2d 913 (7th Cir.) cert. denied 351 U.S. 938, 76 S.Ct. 835, 100 L.Ed. 1466 (1956).

Other cases have sustained venue despite the lack of a defendant's physical presence in the district. For example, where a statute makes failure to do a certain act a crime, the place where the act was to have been performed has been found to be the place where venue lies. United States v. Johnston, 227 F.2d 745 (3rd Cir. 1955) aff'd 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097, reh. den. 352 U.S. 860, 77 S.Ct. 23, 1 L.Ed.2d 69.

Appellant relies on the case of United States v. Swann, 142 U.S.App.D.C. 363, 441 F.2d 1053 (1971). In that case the defendant assaulted a witness who had testified against him at a preliminary hearing and who was to testify against him at a forthcoming criminal trial. Although the criminal proceedings in which the witness testified and was to testify were in the District of Columbia, the court held that venue for a prosecution under the obstruction of justice statute could be laid *only* in Maryland where the witness was assaulted.

Efforts of the government to distinguish *Swann* appear to us to be futile since the operative facts are essentially analogous. Yet, despite the weight due a ruling by the District of Columbia Circuit, we are convinced that the result reached in *Swann* was not correctly reasoned. Of critical importance is the fact that the *Swann* court failed to recognize the distinction between Sec. 1503 and other types of crimes referred to in the court's opinion.

For example, the *Swann* court's reliance on cases determining that venue

under the Public Corruption Act, 18 U.S.C. Sec. 201, is in the district where the bribe is passed or the attempt to bribe is made is, in our view, inapposite. An analysis of the bribery statute makes it clear that the essence of the offense is not the effect which the bribe may have or may be intended to have upon the conduct of the public official, but rather the actual giving or transfer of money or other thing of value, or the offer to transfer money or other thing of value to a public official. *See* Krogmann v. United States, 225 F.2d 220, 227 (6th Cir. 1955). The critical event in the commission of the crime is the actual giving or the offer to give or transfer money or other thing of value, absent which no offense is committed under the statute. In view of the focus of the statute upon these physical aspects, it is not unreasonable to conclude that venue must be laid in the district in which the events occurred. On the other hand, under Sec. 1503, any corrupt attempt, regardless of the means employed, whether by the offer of money or otherwise, to impede or obstruct the due administration of justice is made a punishable offense. It cannot be said that the focus of the statute is exclusively upon any possible means which may be employed. Rather, it is upon the intended effect of any corrupt conduct of whatever description upon the administration of justice by the courts. Under Sec. 1503, the *effect* of corrupt conduct is always intended to occur only at one place; viz., the place or district in which the court sits or in which the proceeding is pending. In contrast, under the bribery statute, the intent to influence the conduct of a public official in no way depends upon where the public official may be at the time. The place of the intended result is irrelevant and the statute does not focus upon it.

In support of its conclusion as to venue under Sec. 1503, the District of Co-

lumbia Circuit also referred to the crime of murder:

> Likewise it would follow from the district court's theory that a prosecution for murder might be maintained in the state or district where the fatal wound took effect and the victim died, although the wound was inflicted in another state or district. Here again the rule is otherwise, both at common law and by statute.

We find this analogy to be unconvincing, for murder, unlike contempt of court, or obstruction of justice under Sec. 1503, is not a crime in which there generally exists an intent to achieve a result in a particular place. As far as murder is concerned, it is of no significance where the intended result is actually accomplished, whether in one state or district or another.

The history of Sec. 1503 throws considerable light upon solution of our problem.[4] As pointed out in United States v. Essex, *supra,* the section originated with the Act of March 2, 1831, 4 Stat. 487, an Act declaratory of the law concerning contempts of court. Before the adoption of the statute "Congress had directed its House Committee on the Judiciary 'to inquire into the expediency of defining by statute all offenses which may be punished as contempts of the courts of the United States, and also to limit the punishment for the same.'" (*See* United States v. Essex, *supra,* 407 F.2d at p. 216, n. 2.) Sec. 1 of the 1831 Act provided for the summary punishment of contempts committed "in the presence of said courts, or so near thereto as to obstruct the administration of justice."[5]

Sec. 2 of the Act, on the other hand, made provision for contempts which were not committed in the presence of the court. In such cases, it was provided that if contemptuous conduct "influencing or injuring officers, jurors or wit-

<hr/>

4. For a fuller treatment of the history of the codification of the contempt power, see United States v. Essex, 407 F.2d 214, 216–17 (6th Cir. 1969), Proceedings of the Judicial Conference of the Fifth Judicial Circuit of the United States, 55 F.R.D. 93, 102–112 (1970), Nye v. United States, 313 U.S. 33, 44–48, 61 S.Ct. 810, 85 L.Ed. 1172 (1941).

5. Sec. 1 is the predecessor of 18 U.S.C. Sec. 401.

nesses" occurred outside of or beyond the presence of the court, the offender could not be punished by the court summarily but could be dealt with only by indictment and prosecution in the usual manner of criminal proceedings. Sec. 2 of the 1831 Act, as pointed out, is presently codified at 18 U.S.C. Sec. 1503, the statute under which the defendant was indicted and convicted.

In subsequent years, the distinction made by the 1831 Act between direct contempts, punishable summarily, and contempts committed outside of the presence of the court, commonly described as constructive contempts punishable only by indictment accompanied by the safeguards of criminal prosecutions, became blurred or obfuscated.

The Supreme Court in Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941), made it clear that the distinction was not to be disregarded. The "so near thereto" language in the first section providing for summary punishment, now 18 U.S.C. Sec. 401, refers, as the court emphasized, to geographical nearness to the court as opposed to a mere causal connection with the obstruction of justice. The similarity between the facts in *Nye* and those of the present case is noteworthy. The defendants in *Nye* exerted an improper influence upon an illiterate and feeble-minded plaintiff to obtain dismissal of a civil lawsuit which had been instituted against the defendants. As in the present case, all of the obstructive acts of the defendants occurred outside of the physical boundaries of the district in which the civil action was pending.

We read the *Nye* decision as implying that the criminal prosecution for a constructive contempt would lie in the district in which the civil action in that case was brought despite the fact that the contemptuous conduct occurred in another district. On the basis of this interpretation, we think that *Nye* is clear authority for the conclusion we have reached as to venue under Sec. 1503. It leaves intact the traditional idea that a

court, within the limits of statutory modifications, should have the power to deal with contempts of its own authority.

Adverting to the *Swann* decision, we believe that the court there failed to recognize that Sec. 1503 is in reality a codification of the court's power to punish contempts committed outside of its presence, albeit by criminal prosecution following indictment, and that the Supreme Court in *Nye* strongly implied, if it did not hold, that such contempts are punishable by the court whose authority is challenged regardless of where the contemptuous acts may have occurred.

Appellant also assigns three other grounds for reversal of his conviction. These assignments concern the refusal of the trial court to sustain motions for mistrial based upon the admission of allegedly improper evidence. We find, after careful consideration, that the trial court did not commit error in the rulings complained of, or in any event that any possible error was harmless and did not affect the substantial rights of defendant to a fair trial.

It follows that the judgment of conviction must be and it is hereby

Affirmed.

McCREE, Circuit Judge (concurring).

I concur and append this separate statement not because I disagree with the opinion of the court, but because I want to record my concern about the practice of many prosecutors of deliberately injecting inadmissible prejudicial evidence into criminal trials and thereby unnecessarily jeopardizing an apparently strong case. In numerous other cases, we have condemned "prosecutorial overkill" and have felt obliged to reverse convictions based upon it. *E. g.,* United States v. Smith, 500 F.2d 293 (6th Cir. 1974), United States v. Calvert, 498 F.2d 409 (6th Cir. 1974), and United States v. Nemeth, 430 F.2d 704 (6th Cir. 1970).

In this case, there were at least three instances in which the prosecutor

brought to the attention of the jury improper prejudicial evidence. In one, the government attorney elicited from an informer the statement that he wanted his identity to remain confidential because he feared that if it were disclosed, his life and the lives of other government informers would be endangered because someone might place bombs in their automobiles. The district court refused to grant a mistrial or to direct the jury to disregard the statement, observing that the informer had not said that he feared that *appellant* would place bombs in the automobiles. In another, the prosecutor asked an attorney who had represented appellant's former wife in a divorce proceeding against him whether anyone had ever threatened to kill him if he continued to represent her in the matter. Again the court refused to grant a mistrial but did instruct the jury to disregard the question to which no answer had been given. In the third instance, after eliciting from appellant's former accomplice the admission that he had firebombed a house at appellant's request, the prosecutor adduced the witness' further testimony that he had been honorably discharged from the Marines and had never been in trouble until appellant met and corrupted him. Once more, the court denied the motion for a mistrial.

Although these errors are egregious, appellee did not deign in its brief to answer appellant's arguments asserting them as reasons for reversal, possibly because it regarded them as unworthy of response. I believe, however, that they have substance, and were I not persuaded, like my colleagues, that the lawful evidence of appellant's guilt is overwhelming, I would vote to reverse and require a new trial. In another appeal the proof of guilt may not be so compelling and the practice I deplore may snatch defeat from the jaws of victory.