**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gilbert Eloy ATENCIO, Defendant-Appellant.**

**No. 78–1530.**

United States Court of Appeals, Ninth Circuit.

Nov. 22, 1978.

George G. Walker, San Francisco, Cal., for defendant-appellant.

Robert L. Dondero, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before BROWNING and HUG, Circuit Judges, and HOFFMAN,* District Judge.

PER CURIAM:

Gilbert Atencio was indicted on two counts of selling cocaine and one count of possessing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 844. When Atencio failed to appear for trial, he was also indicted for willfully failing to appear for trial in violation of 18 U.S.C. § 3150. He was convicted on all four counts. Atencio appeals only his conviction under 18 U.S.C. § 3150.

Atencio contends the trial court erred in refusing to allow one James Barbic, Atencio's tax consultant, to testify about Atencio's state of mind while a fugitive. The testimony is asserted to be admissible under the "present state of mind" exception to the hearsay rule, Fed.R.Evid. 803(3). Atencio also contends the court erred in failing to instruct the jury on compulsion and duress as a legal excuse for his failure to appear for trial.

In addition to disputing the above contentions, the government argues that this court should apply the concurrent sentence doctrine and decline to grant relief on this appeal. Since we find that the court did not err as to the issues raised by appellant, we need not reach the question of whether the concurrent sentence doctrine is applicable to this case.

On October 3, 1972 Atencio was indicted on the narcotics charges noted above. The charges arose from an undercover investigation by an agent of the Drug Enforcement Administration during the months of August and September of 1972. Since appellant does not appeal his conviction on these counts, it is unnecessary to discuss the

facts relating to these offenses. Defense counsel stipulated that the defendant was aware of the February 12, 1973 trial date set for these offenses.

Atencio testified in essence that he had not appeared for trial and had fled to Mexico because he was in fear of his own life and his family's welfare, due to his knowledge that a person named Charles Garcia had put out a contract on his life. Atencio testified he received $45,000 in trust from Garcia while Garcia was in prison, which Atencio invested in real property in Fairfax, California. Soon after Atencio's arrest Garcia purportedly began asking for the return of the money. Atencio was unable to comply with Garcia's demands because the Internal Revenue Service had seized all of Atencio's assets subsequent to his arrest on the narcotics charges. According to Atencio's testimony, his friends advised him that Garcia thought Atencio had taken the money, and one Jan DeBruyn told him Garcia had put a contract out on his life. On February 8, 1973 someone allegedly broke into Atencio's house and stole his briefcase containing personal property and his wallet. The next day Atencio met with his attorney, discussed the trial set for February 12, and made an appointment to meet again the next day. After the meeting with his attorney Atencio drove to his property located in Greenbrae, California, where he observed two men sitting in a parked car. A short time later, as Atencio was leaving the premises, someone took a shot at him, according to his testimony. At this point he panicked and fled, eventually arriving in Mexico. While in Mexico he learned Garcia was still angry with him. About 18 months after entering Mexico, Atencio was arrested on a marijuana charge and incarcerated for 28 months. Upon being acquitted by the Mexican Supreme Court, Atencio was released on August 24, 1977. He then voluntarily returned to the United States and surrendered to the authorities.

* Honorable Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

On cross examination Atencio admitted that he had never contacted his wife, his attorney or the police, about the burglary, the shooting, or his decision to flee to Mexico.

DeBruyn, who admitted dealing in narcotics, testified he had told Atencio that Garcia had put a contract on his life. The defense also called Barbic, the tax consultant, who testified that Atencio was involved in many legitimate business activities. Barbic visited Atencio in Mexico in 1973 and 1974. Barbic testified that he had discussed with Atencio his reason for hiding in Mexico, however the court sustained an objection to any testimony concerning the content of these conversations.

Evidence introduced by the prosecution showed that a partially burned wallet containing the personal identification of Gilbert Atencio was found near the site of a February 7 plane crash. A police officer guarding the scene of the crash on February 10 was tipped off as to the existence of the wallet by an unidentified female. It was not explained how this wallet found its way to the crash site. Atencio testified that a wallet was stolen from him the day *after* the crash.

I

The crucial issue on appeal is whether Atencio properly made out a defense of duress to excuse his failure to appear for trial. If appellant was not entitled to an instruction submitting the issue of duress to the jury, then any error concerning the exclusion of Barbic's testimony would be harmless. The excluded testimony concerned Atencio's motive for hiding in Mexico and was relevant only for the purpose of corroborating Atencio's defense of duress.

■ This court, in *United States v. Gordon*, 526 F.2d 406, 407 (9th Cir. 1975), set out the classic definition of duress or coercion as it appears in *Shannon v. United States*, 76 F.2d 490, 493 (10th Cir. 1935):

Coercion which will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion [and is not entitled to an instruction submitting that question to the jury.]

Of crucial importance in any attempt to raise duress as a defense are the elements of immediacy and opportunity to avoid the act. *United States v. Patrick*, 542 F.2d 381, 388 (7th Cir. 1976). See also *United States v. Polytarides*, 584 F.2d 1350 (4th Cir. 1978).

The facts and issues in *Patrick* are similar to those before this court. Patrick gave testimony before a grand jury which led to the indictment of O'Hara. During the year prior to his indictment O'Hara made several visits to Patrick's family and made certain veiled threats. Patrick knew of O'Hara's reputation as a killer, and was very upset about O'Hara's visits. He expressed this concern to his attorney, and through his attorney to the United States Attorney's office. In May, 1975 O'Hara again visited the Patrick home and, upon being advised that Patrick was not there, told Patrick's daughter: "Either I see your father before my case goes to trial or you all are going to suffer, and you tell him that, and tell him not to forget it." Patrick advised his attorney that he was not anxious to testify against O'Hara. Upon being subpoenaed to testify at the June 10 trial, Patrick refused to answer questions pertaining to O'Hara. Patrick was then prosecuted for criminal contempt arising out of his refusal to obey a court order to testify. On appeal the court recognized that Patrick sincerely believed O'Hara to represent a threat to the safety and well-being of Patrick and his family. However, fear alone would not legally justify or excuse a witness' refusal to testify in violation of a court order. The element of immediacy requires some evidence that such injury was present, immediate or impending. Beyond that, an opportunity to avoid violating the law without subjecting oneself to immediate danger prevents one from asserting such threats as a defense. 542 F.2d at 386–89.

■ Atencio's testimony that someone took a shot at him on February 9, coupled with his knowledge that someone had a contract out on his life, might possibly satisfy the element of impending personal harm. However, appellant failed to present evidence which would indicate that he had no opportunity to avoid violating the law without subjecting himself to further immediate danger. In *Patrick* it was the act of testifying which put the appellant in fear for his life, yet the court disallowed duress as a defense. Atencio was not in danger from Garcia because of his upcoming trial date, but rather from a matter not directly related to his appearance in court. Given the great concern which one should attach to a solemn vow to appear in court on a given trial date, one must be expected to seek alternate means of protection before fleeing the country to avoid a perceived danger. Atencio's failure to contact the police, the court, or even his attorney about the threats against his life underlines the inapplicability of a defense of duress to the facts of this case.

Because we believe that Atencio failed to present sufficient evidence as to the immediacy of the danger to which he would be subjected by appearing for trial, or evidence that he had no opportunity to do anything other than flee to avoid danger to himself, the court below did not err in withdrawing the defense of duress from the jury's consideration.

## II

In light of our holding above, it cannot be said that the exclusion of Barbic's testimony as to Atencio's stated reasons for being in Mexico was error. Barbic's testimony would have been merely corroborative since Atencio testified as to the reason for his flight and subsequent failure to appear for trial. The issue of duress was properly withdrawn from the jury, thereby making any testimony Barbic would have added irrelevant.

Affirmed.