**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Michael Lawrence ROCHE, Defendant-Appellee.**

No. 79–5029.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1979.

Decided Jan. 4, 1980.

---

Albert Jones, U. S. Atty., James H. Barr, Asst. U. S. Atty., Louisville, Ky., John Voorhees, Washington, D. C., for plaintiff-appellant.

Charles Chaney, Paducah, Ky., for defendant-appellee.

Before CELEBREZZE and ENGEL, Circuit Judges and PECK, Senior Judge.

CELEBREZZE, Circuit Judge.

This case is before the court on appeal by the Government pursuant to 18 U.S.C. § 3731 from a dismissal by the district court of an indictment lodged against appellee Michael Lawrence Roche for bail jumping in violation of 18 U.S.C. § 3150.[1] Upon appellee's motion the district court dismissed the indictment on the ground that proper criminal venue did not lie in the Western District of Kentucky. The sole issue presented for appellate review is whether proper criminal venue lies in the Western District of Kentucky. For the reasons stated below we reverse and order reinstatement of the indictment.

Following a jury trial in the United States District Court for the Western District of Kentucky, Roche was convicted of one count of interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312. Upon entry of judgment of conviction, the district court sentenced Roche to a five-year term of imprisonment.

---

1. 18 U.S.C. § 3150 provides:

Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both, or (2) if he was released in connection with a charge of misdemeanor, be fined not more than the maximum provided for such misdemeanor or imprisoned for not more than one year, or both, or (3) if he was released for appearance as a material witness, shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

The district court set Roche's bail bond pending appeal at $15,000 with 10% cash acceptable.

On May 6, 1977 Roche posted the required 10% cash to effectuate his release. Roche agreed that if his appeal was either affirmed or dismissed he would abide and obey all orders made by the district court concerning the commencement of his prison term. On October 28, 1977 this court affirmed Roche's conviction and on February 21, 1978 the Supreme Court denied Roche's petition for a writ of certiorari. On March 9, 1978 the district court ordered Roche to surrender to the United States Marshal in Detroit, Michigan on March 27, 1978 in order to commence serving his prison term.[2] Roche failed to report to the Marshal's office on that date.

On April 19, 1978 authorities apprehended Roche in Pittsburgh, Pennsylvania and returned him to the Western District of Kentucky pursuant to a writ of habeas corpus *ad prosequendum*. On November 13, 1978 a federal grand jury in the Western District of Kentucky returned the instant indictment charging Roche with willful bail jumping in violation of 18 U.S.C. § 3150. On December 20, 1978 the district court granted Roche's motion to dismiss the indictment on the ground that criminal venue did not lie in the Western District of Kentucky.[3] The Government brings this direct appeal from the dismissal of the indictment.

The requirements for appropriate venue in federal criminal prosecutions emanate from article III, section 2, and the sixth amendment to the United States Constitution. These constitutional provisions guarantee a defendant a right to a trial in the state and district where the offense was committed. These constitutional provisions are implemented by Federal Rule of Criminal Procedure 18:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses.

The central inquiry in this appeal thus becomes in what district did Roche allegedly commit the offense of bail jumping. Did the alleged offense occur in the district which admitted Roche to bail and ordered him to report, or did the offense occur in the district where Roche failed to report to the United States Marshal as ordered?

Since the statute under which Roche was charged does not prescribe venue for the offense, we must determine from other sources the place where the statutory offense must be deemed to have been committed. In *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), the Supreme Court held that "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Id.* at 635, 81 S.Ct. at 361, *quoting United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946); *United States v. O'Donnell*, 510 F.2d 1190 (6th Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). Both parties to this appeal agree that the above standard is applicable in resolving this dispute, but disagree as to its application instantly.

The Government convincingly argues that venue for the crime charged in the present indictment properly lies in the Western District of Kentucky because the essence of the offense of bail jumping is an affront to the power of a court to maintain

---

**2.** Roche listed a Michigan address as a home address on his bail release documents and it seems that the district court allowed Roche to report to the Marshal's office in Detroit out of a sense of convenience for Roche.

**3.** Both parties to this appeal agreed at oral argument that the basis for the district court's dismissal of the indictment was inappropriate criminal venue. The district court, however, did not clearly articulate the basis for his dismissal in his order. Though in this instance we could discern from the pleadings and stipulations of counsel the basis for the district court's order, we request the district court in the future to articulate the basis for his ruling in order to promote meaningful appellate review.

continuing jurisdiction over a bailed defendant and thereby duly administers justice. The Government further argues that the focus of the crime of bail jumping is upon the intended effect that the proscribed act has on the power and dignity of the court which sets bail and not upon the actual physical aspects of the offense.

On the contrary, Roche contends the focus of the crime of bail jumping is upon the failure of the bailed defendant to perform a legally required act. Thus, Roche argues, venue lies in the district where the act was required to be performed. Roche strenuously relies upon the Supreme Court's decision in *Johnston v. United States*, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956), as authority for his position. In *Johnston* the Court held "that where the crime charged is a failure to do a legally required act, the place fixed for its performances fixes the situs of the crime." *Id.* at 220, 76 S.Ct. at 742 (footnote omitted).

Our review of the authorities in this area of the law has provided little assistance in resolving this constitutional issue. We agree with the parties that the resolution of this issue depends upon the nature of the crime alleged and the act or acts constituting it. We find the Government's arguments on this point persuasive and hold the alleged crime in this case occurred in the Western District of Kentucky.

█ It is well settled that one released on bail under the Bail Reform Act is under the continuing jurisdiction of the district court which admitted that person to bail. *See, e. g., United States v. Harris*, 544 F.2d 947 (8th Cir. 1976). Also, as a condition of his release a bailed defendant agrees to obey all orders of the court which released him. In our view when a bailed defendant willfully disobeys a court order requiring him to report for commencement of his prison term, the nature of that failure constitutes an affront to the power and dignity of the court which admitted him to bail and a most flagrant breach of the conditions of his lawful release. The crime of bail jumping diminishes the power of a court to control those properly within its jurisdiction and afflicts that court with its detrimental effects.

We find support for our interpretation not only in the words of the statute itself, but also from the statutory scheme in which the separate offense of bail jumping is found. It seems clear that the separate offense of bail jumping was designed and implemented by Congress in order to complement the relatively weak arsenal of the district courts in their efforts to deter bail jumping. Congress perceived the traditional sanctions of forfeiture and criminal contempt as ineffective deterrents. The separate criminal sanction was enacted with a view to aid in the deterrence of bail jumping and enhance the effective administration of justice in the courts. *See Cong. Rec.*, 83d. Cong. 2d Sess. 11295–97 (July 21, 1954).

█ We are keenly aware that Roche contends the act which constituted the alleged offense occurred in Detroit, Michigan. We feel, however, that the focus of the crime of bail jumping and its primary effect is upon the proper administration of justice in the court which admits one to bail and is akin to a "constructive contempt of court." *United States v. O'Donnell*, 510 F.2d 1190 (6th Cir. 1975). As Mr. Justice Holmes stated in *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911):

> [a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he [perpetrator] had been present at the effect, . . .

Therefore, criminal venue properly lies in the Western District of Kentucky.[4]

Roche submits the decision of the Supreme Court in *Johnston v. United States*, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956), is dispositive of the issue presented

---

4. We render no opinion as to whether venue may also be proper in the Eastern District of Michigan.

and mandates affirmance of the district court. We disagree.

In *Johnston* draft registrants classified as conscientious objectors refused to perform alternative service in hospitals located in judicial districts other than where they were registered. The registrants refused to report to designated hospitals and were prosecuted under the Selective Service Act. The Supreme Court held that venue for their trials was proper in the judicial district where the civilian work was to be performed, not in the judicial district where the orders were issued. *Id.* at 220, 76 S.Ct. 739. In our view the case *sub judice* is distinguishable from the *Johnston* case.

█ In *Johnston* the focus of the criminal sanction was upon the failure to perform the alternative civilian duty imposed by the conscientious objector classification. The effects of that failure were felt in the district where the alternative service was to be performed. The criminal section of the Selective Service Act under which the registrants were prosecuted was not designed to enhance the draft board's jurisdiction over its registrants or to deter disobedience of draft board orders. Rather, the statute was enacted to insure that all draftees served their country either in the military or through alternative service. On the other hand, the focus of the bail jumping statute is to enhance the power of the court over those it admits to bail and to provide a further deterrent to willful disobedience of court orders.[5]

Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to reinstate the indictment against appellee Roche.

5. From a close reading of the statutory provisions governing the federal bail release program, it becomes clear that Congress recognized the need for flexibility with respect to the conditions which a court may impose for release. *See* 18 U.S.C. §§ 3148, 3146; Fed.R. Crim.P. 46. It seems fairly clear that if the Government is not able to enforce the bail jumping statute in the district where bail was set, district courts are going to be less willing to afford bailed defendants the flexibility evident in this case. For example a court may not accord a bailed defendant the privilege of reporting in person to the place of incarceration. Roche was convicted in Kentucky and allowed to return to Michigan, his home, while admitted to bail. Further, Roche was permitted to report for commencement of his prison term in Michigan. If a result opposite to what we reach today is imposed, bailed defendants could very well be confined in the district where they were convicted and forced to report in those districts.