**UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,**

v.

**William Scott MARTIN, Defendant-Appellant, Cross-Appellee.**

No. 82–8331

**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

May 2, 1983.

Ronald A. Dion, North Miami Beach, Fla., for defendant-appellant.

Melissa S. Mundell, Asst. U.S. Atty., Savannah, Ga., James G. Lindsay, Washington, D.C., for plaintiff-appellee.

Before RONEY, VANCE and ANDERSON, Circuit Judges.

PER CURIAM:

Appellant, William Scott Martin, seeks review of his conviction for willful bail

jumping in violation of 18 U.S.C.A. § 3150 (West 1969).[1] We affirm.

In 1976, Martin was convicted of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The United States District Court for the Southern District of Georgia sentenced Martin to 18 months of imprisonment, but released him on $25,000 bail bond pending appeal. The Fifth Circuit affirmed Martin's conviction in October, 1977. Subsequently, in an order dated January 6, 1978, the district court directed Martin to report to the Eglin Air Force Base Correctional Institute in Eglin, Florida, on or before noon of January 11, 1978. Notices of this surrender order were sent to Martin at his mother's residence in Hartford, Connecticut, to Martin's attorney in Massachusetts, and to the surety company which had posted Martin's bond. However, Martin did not appear at Eglin Air Force Base on January 11, 1978, or at any time thereafter.[2]

More than four years passed before Martin was apprehended by Customs officers at Miami International Airport after arriving on a flight from St. Martin in the Netherlands Antilles.[3] When apprehended, Martin had several birth certificates, a driver's license, numerous credit cards, and a varie-ty of other items identifying him as Daniel Childers.[4] Upon questioning, Martin admitted that he was using an assumed name. Martin also told one of the Customs officers that he had been convicted on a drug charge in Georgia but had not reported to serve his sentence because he believed the 18-month prison term was too lengthy.

Following a jury trial in the Southern District of Georgia, Martin was convicted for failing to appear after release on bond pending the appeal of a felony conviction, in violation of 18 U.S.C.A. § 3150. The district court sentenced Martin to five years of imprisonment, running consecutively to his prior 18-month sentence. The district court also imposed a $5,000 fine and assessed $3,181.80 in witness costs. This appeal followed.

■ Martin's first argument on appeal is that the trial court should have granted his motion to dismiss on the ground that proper venue did not lie in the Southern District of Georgia. According to Martin, proper venue for a bail-jumping violation under 18 U.S.C.A. § 3150 lies in the district where the defendant failed to report, not in the district where the defendant was admitted to bail.[5] Martin supports this contention by

---

1. 18 U.S.C.A. § 3150 provides:

 Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both, or (2) if he was released in connection with a charge of misdemeanor, be fined not more than the maximum provided for such misdemeanor or imprisoned for not more than one year, or both, or (3) if he was released for appearance as a material witness, shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

2. Martin's $25,000 bond was forfeited in February of 1978, but the company which had posted the bond already had been reimbursed for the loss. One of company's agents testified at trial that he had received a phone call from a person who identified himself as "Mr. Martin" some-time during January of 1978. The caller stated that he was supposed to surrender the following Thursday, but he had decided not to surrender and wanted to pay the cost of his bond. Several days later, the company received $25,-000 in money orders and cashier's checks to pay off Martin's bond.

3. The Customs officers were acting on a tip provided by the Netherlands Antilles Police Department, which had detained appellant on two occasions for questioning about possible currency and narcotics violations.

4. Some of these items of false identification had been issued prior to January 11, 1978, the date Martin was to report for imprisonment.

5. Appellant suggests that venue also might be appropriate in the district where the defendant ultimately was found, which in this case would be the Southern District of Florida. *Cf. United States v. Wray,* 608 F.2d 722, 725 (8th Cir.1979) (holding that proper venue in trial for violation of 18 U.S.C.A. § 4082(d), which states that willful failure of a prisoner to remain within the

citing numerous cases which stand for the general rule that "where the crime charged is a failure to do a legally required act, the place for performance fixes the situs of the crime." *Johnston v. United States,* 351 U.S. 215, 220, 76 S.Ct. 739, 742, 100 L.Ed. 1097 (1956). *See, e.g., id.* (conscientious objectors refused to report for civilian work as ordered by draft board; venue proper in district where the civilian work was to be performed); *United States v. Quimby,* 636 F.2d 86 (5th Cir.1981) (taxpayer failed to supply information regarding gross income on his tax return; venue proper in district where the taxpayer was required to file); *United States v. Scott,* 424 F.2d 285 (4th Cir.1970) (failure of draft registrant to report for physical examination and induction; venue proper where he failed to report).

We do not quarrel with Martin's statement of this general rule, but we do not believe that the rule precludes a prosecution for bail-jumping in the district where the defendant was admitted to bail. A defendant who willfully fails to obey a district court's surrender order after being released on bail does not merely fail to perform a legally required act; his willful failure to surrender also constitutes an affront to the power and dignity of the district court which released him on bail and ordered him to surrender. We believe that Congress intended to give district courts a strong remedy for this specific and egregious form of contempt of court when it enacted the penalties for jumping bail now contained in 18 U.S.C.A. § 3150. *See* S.Rep. No. 2041, 83rd Cong., 2d Sess., *reprinted in* 1954 U.S. Code Cong. & Ad.News 3074; Cong.Rec., 83rd Cong., 2d Sess. 11295–97 (July 21, 1954).

The only other circuit court of appeals that has expressly considered this issue concluded that bail-jumpers can be prosecuted under 18 U.S.C.A. § 3150 in the district where they were admitted to bail. In *United States v. Roche,* 611 F.2d 1180 (6th Cir.

1980), the Sixth Circuit cogently discussed the reasons supporting this conclusion:

It is well settled that one released on bail under the Bail Reform Act is under the continuing jurisdiction of the district court which admitted that person to bail. *See, e.g., United States v. Harris,* 544 F.2d 947 (8th Cir.1976). Also, as a condition of his release a bailed defendant agrees to obey all orders of the court which released him. In our view when a bailed defendant willfully disobeys a court order requiring him to report for commencement of his prison term, the nature of that failure constitutes an affront to the power and dignity of the court which admitted him to bail and a most flagrant breach of the conditions of his lawful release. The crime of bail jumping diminishes the power of a court to control those properly within its jurisdiction and afflicts that court with its detrimental effects.

We find support for our interpretation not only in the words of the statute itself, but also from the statutory scheme in which the separate offense of bail jumping is found. It seems clear that the separate offense of bail jumping was designed and implemented by Congress in order to complement the relatively weak arsenal of the district courts in their efforts to deter bail jumping. Congress perceived the traditional sanctions of forfeiture and criminal contempt as ineffective deterrents. The separate criminal sanction was enacted with a view to aid in the deterrence of bail jumping and enhance the effective administration of justice in the courts. *See Cong.Rec.,* 83d. Cong.2d Sess. 11295–97 (July 21, 1954).

*Id.* at 1183.

The Sixth Circuit also noted that if the government could not enforce the bail-jumping statute in the district where the defendant was released on bail, district courts might become less willing to allow

extended limits of his confinement or to return within the time prescribed to an institution shall be deemed an escape, is either "in any district in which he was found after he left the

extended limits of his confinement *or* in the district where he failed to 'return' or report") (emphasis in original).

defendants to surrender at places convenient to them and "bailed defendants could very well be confined in the district where they were convicted and forced to report in those districts." *Id.* at 1184 n. 5.

We hold, therefore, that when a defendant is charged with bail-jumping in violation of 18 U.S.C.A. § 3150, venue is proper in the district which released the defendant on bail.[6] Accordingly, the district court did not err when it refused to dismiss the charges against Martin on the ground that venue was improper.

 Martin's second argument on appeal relates to the jury instructions. Martin asked the court to instruct the jury that one of the elements of the crime under 18 U.S.C.A. § 3150 is that the defendant failed to appear "before a court or judicial officer *on a specific date.*" Record on Appeal, vol. 1, at 50 (emphasis added). Instead, the court instructed the jury that the government had to prove that the defendant failed to appear "before a Judge or Magistrate of this Court *as required.*" *Id.,* vol. 5, at 12A (emphasis added). Martin contends that his theory of defense was that he did not acquire the intent to violate 18 U.S.C.A. § 3150 until after the date he was to report and, therefore, that the instruction actually given was erroneous because it permitted the jury to convict him without finding that he willfully failed to surrender on the exact date specified in the surrender order. We disagree. "The mere failure to recite the jury instructions in the precise language requested by defendant is not error where . . . the instructions are otherwise sufficient." *United States v. Bizzard,* 674 F.2d 1382, 1389 (11th Cir.1982). The court's instruction adequately informed the jury of the elements of the crime of bail-jumping.

Moreover, the words "as required" in the court's instruction were taken directly from 18 U.S.C.A. § 3150, *see* note 1 *supra,* and there is little danger of prejudice when the instruction tracks the language of the statute. *See Davis v. McAllister,* 631 F.2d 1256, 1260 (5th Cir.1980); C. Wright, 2 Federal Practice and Procedure: Criminal 2d § 485, at 711–12 (1982) ("An instruction in the language of a statute is proper if the statutory words are of clear and simple import and generally understood meaning").[7]

Martin's other contentions do not require discussion. His sufficiency argument is without merit, and his other arguments relate to issues which either are without merit or constituted harmless error.

The judgment of conviction is

AFFIRMED.

---

**6.** We need not, and expressly do not, decide whether venue might also be proper in other judicial districts.

**7.** Martin also contends that the court erred by refusing to give the following instruction: "The events which occurred after Jan. 11, 1978, may be considered only as they relate to the defendant's knowledge and intent to fail to appear on Jan. 11, 1978." Record on Appeal, vol. 1, at 50. Although the court did not use this precise language as proffered by the defendant, the

court adequately informed the jury that Martin was charged only for failing to surrender as required on January 11, 1978, not for conduct or offenses occurring at a later time. The jury charge included the following statement: "I caution you, members of the jury, that you are here to determine the guilt or innocence of the accused from the evidence in this case. He is not on trial for any act, conduct, or offense not alleged in this indictment." *Id.,* vol. 5, at 15A.