**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert S. CHAPPELL,**
**Defendant–Appellant.**

No. 87–2464.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1988.
Decided July 29, 1988.

Timothy J. Burns, Indianapolis, Ind., for defendant-appellant.

Jeffrey L. Hunter, Asst. U.S. Atty., Bradley L. Williams and Jackie M. Bennett, Jr., Indianapolis, Ind., for plaintiff-appellee.

Before WOOD, Jr. and CUDAHY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Defendant-appellant Chappell was convicted by a jury of willfully failing to appear as required pursuant to conditions of his release on bail pending appeal from an earlier conviction, in violation of 18 U.S.C. § 3150 (1982).[1] He was sentenced to imprisonment for 44 months, consecutive to any other federal sentence, and ordered to pay a $50 special assessment.

## THE FACTS OF THE OFFENSE

It was proved that Chappell had been convicted of mail fraud November 19, 1981 in the District Court for the Southern District of Indiana. After the verdict, the court announced that Chappell could remain at liberty under his existing bond (a $35,000 surety bond he had originally posted in California, where he lived, and had been arrested). On March 1, 1982 the district court sentenced him to a term of imprisonment. He immediately appealed and asked for a stay pending final judgment on appeal. Although the record does not show an oral or written order on the subject, Chappell was permitted to remain at liberty. This court affirmed January 14, 1983, 698 F.2d 308. Our mandate reached the district court February 25, after denial of rehearing and denials of a stay of mandate by this court and the Supreme Court.

On or just before February 25, Chappell's attorney got in touch with the Chief Deputy Marshal for the Southern District of Indiana concerning an arrangement to have Chappell surrender in California. The Chief Deputy Marshal got in touch with a Deputy Marshal for the Central District of California and it was arranged that Chappell would surrender at the latter's office in Los Angeles at 10:00 AM February 28, 1983. Counsel notified Chappell and Chappell agreed to appear accordingly. He did not do so, but went to the Bahamas, where he had earlier resided and carried on business.[2] He stayed there until arrested in Miami on December 9, 1986.

On appeal, Chappell argues four propositions, which we dispose of as follows.

## I. VENUE

Chappell argues that the court erred in denying his motion to dismiss for improper venue. He contends that prosecution could only have been maintained in the Central District of California where he failed to appear.

He relies on *Johnston v. United States*, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956). Defendants there were instructed by draft boards in their districts of residence to report for civilian work to state hospitals in other districts. Defendants failed to report. The Supreme Court held that venue lay only in the districts where the state hospitals were located, saying "[w]e are led to this conclusion by the general rule that where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime." 351 U.S. at 220, 76

---

**1.** Chappell failed to appear February 28, 1983. 18 U.S.C. § 3150, created by Pub.L. 89–465, § 3(a), effective June 23, 1966, and in effect on the date of the offense, provided:

Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the FEDERAL RULES OF CRIMINAL PROCEDURE, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any

offense, be fined not more than $5,000 or imprisoned not more than five years, or both. . . .

Pub.L. 98–473, § 203(a), effective October 12, 1984, repealed former § 3150 and created § 3146, covering the same subject. Section 3146 was amended into its present form by Pub.L. 99–646, § 55(f), effective 30 days after November 10, 1986.

**2.** A bench warrant was issued, and bail ordered forfeited by the District Court for the Southern District of Indiana. Judgment was entered against the surety.

S.Ct. at 742 (footnote omitted). We think, however, that *Johnston* can be distinguished and does not control where a defendant has secured his release from a federal court or judicial officer in one district, to be at liberty pending judicial proceedings and subject to appearance as required, and the place at which appearance comes to be required and where he fails to appear is in a different district.

Rule 18, FED.R.CRIM.P., calls generally for prosecution "in a district in which the offense was committed." *See also* Article III, section 2 of the Constitution and the Sixth Amendment. Congress has recognized that an offense may be begun in one district and completed in another or may be committed in more than one district, and accordingly may be prosecuted in any of such districts. 18 U.S.C. § 3237.[3]

> The decisions are discrete, each looking to the nature of the crime charged.... Where Congress is not explicit, "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703 [66 S.Ct. 1213, 1216, 90 L.Ed. 1529].

*Travis v. United States,* 364 U.S. 631, 635, 81 S.Ct. 358, 361, 5 L.Ed.2d 340 (1961).

In 1980 the Sixth Circuit considered a case in which defendant had been indicted in the Western District of Kentucky for failure to appear. This was the district where he had earlier been convicted and sentenced, released on bail pending appeal, and upon affirmance, ordered to surrender in a different district, where he lived. He failed to appear. The court held that venue was proper in the Western District of Kentucky, the district where the district court had released defendant on bail. *United States v. Roche,* 611 F.2d 1180 (6th Cir. 1980). The court reasoned

> [i]n our view when a bailed defendant willfully disobeys a court order requiring

him to report for commencement of his prison term, the nature of that failure constitutes an affront to the power and dignity of the court which admitted him to bail and a most flagrant breach of the conditions of his lawful release. The crime of bail jumping diminishes the power of a court to control those properly within its jurisdiction and afflicts that court with its detrimental effects.

611 F.2d at 1183.

The court indicated a similarity to a constructive contempt of court,[4] and relied on the doctrine that one whose acts outside a jurisdiction intentionally caused detrimental effects within it may be dealt with as if he had been present at the effect. *Ibid.* The court indicated no opinion whether venue would also be proper in the district where defendant had been ordered to appear, but failed. 611 F.2d at 1183 n. 4.

In 1983, the Eleventh Circuit decided a similar question. The court, relying on *Roche,* decided that venue was proper in the Southern District of Georgia, where the district court had convicted and sentenced defendant, released him on bail pending appeal, and, after affirmance, had ordered him to appear at an institution in Florida. *United States v. Martin,* 704 F.2d 515 (11th Cir.1983). The court did not decide whether venue might be proper in other districts. 704 F.2d at 518 n. 6.

In 1983, the Eighth Circuit dealt with the other side of the coin. Defendant had been convicted and sentenced by the District Court for the District of Arizona. That court had ordered him to surrender in the Western District of Missouri. He failed to do so and was indicted in the latter district. The Eighth Circuit held that venue proper because defendant's act of appearing should have occurred in that district. *Zerilli v. United States,* 706 F.2d 877 (8th Cir.1983). The court expressed no opinion

---

**3.** *See generally* 2 Wright, FEDERAL PRACTICE AND PROCEDURE §§ 301–303.

**4.** The court cited *United States v. O'Donnell,* 510 F.2d 1190 (6th Cir.1975), *cert. denied* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). In that case defendant acted in Texas to make

arrangements for the killing of a witness in a case pending in the Western District of Tennessee. The court held venue proper in the Western District of Tennessee for an indictment charging an endeavor to obstruct and impede the due administration of justice.

on the propriety of venue in Arizona. 706 F.2d at 879 n. 5.

In 1986, the Sixth Circuit held that in the type of situation we have been considering, venue "is proper both in the district issuing the order to appear and in the district where defendant was ordered to appear...." *United States v. Williams*, 788 F.2d 1213, 1214 (6th Cir.1986).[5] Defendant had been indicted in the Eastern District of Kentucky for firearms violations. He was arrested in the Southern District of Indiana, released on bond by a magistrate in that district and ordered to appear before the District Court for the Eastern District of Kentucky. He failed to appear and was indicted in the Kentucky district for such failure.

In deciding that venue was proper in either district, the court applied a substantial contacts test as articulated in *United States v. Reed*, 773 F.2d 477 (2d Cir.1985). *Reed* involved a prosecution for perjury and obstruction of justice. A civil action had been brought in the Southern District of New York. Defendant's perjury occurred during his deposition in San Francisco for the purpose of the New York action. In his deposition he used notes he had created in Virginia and California and their creation and use were alleged to constitute obstruction of justice. He was indicted in the Southern District of New York and the Second Circuit decided that venue was proper.

The court concluded that "where the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue." 773 F.2d at 480. The court described the test it applied "as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding...." 773 F.2d at 481.

In applying the *Reed* test in *Williams*, the Sixth Circuit noted (1) that since § 3150 proscribed failure to act, the site of defend-

ant's acts does little to establish substantial contacts in either district; (2) the element of failure to appear occurred in the district where appearance should have been accomplished, but the nature of the failure constitutes an affront to the power and dignity of the court which admitted the defendant to bail; (3) the effect of the conduct is found in both districts; and (4) the districts are each likely to be suitable for factfinding because relevant evidence is probably present in both. 788 F.2d at 1215–17.

■ We agree generally with the analysis in *Williams*. We add that a predicate element of the offense is that a defendant have been released pursuant to the Release and Detention Chapter, and that act occurred in the district of release. Moreover, a defendant must necessarily have been present in such district and performed whatever acts were necessary to obtain release. He will, in effect, have created an obligation to that court, in return for his freedom, to appear as from time-to-time required. These are additional contacts with the district where he was released.

We are satisfied that venue is proper in the district where release was ordered as well as the district in which a defendant was required, but failed, to appear.

Chappell goes on to argue, however, that he was admitted to bail (ordered released) in the Central District of California, and not in the Southern District of Indiana. He relies, of course, on the fact that originally, when arrested in the California district, a magistrate in that district fixed the amount of the bond, and ordered him released when he posted it, and that the bond he obtained in California was the only one involved throughout the proceedings. He gives no significance to the fact that orders of the magistrate and court in the Southern District of Indiana affirmatively permitted him to remain at liberty on the security of the same bond.

The relevant sequence of events is as follows:

---

**5.** *See* 2 Wright, Federal Practice and Procedure, Criminal 2d, 1987 Pocket Part § 302.

Chappell was indicted in the Southern District of Indiana July 19, 1979, and a warrant issued. In December, 1980, he was arrested in the Central District of California and brought before a magistrate. He was ordered released on a $35,000 corporate surety bond, and he posted one. In January the magistrate ordered him held to answer in the Southern District of Indiana, and to appear before Magistrate Endsley at Indianapolis January 20. He complied.

Magistrate Endsley entered an order releasing him on the bond already posted, ordering him to appear at Indianapolis and such other places as ordered by the magistrate or court, and restricting him to California except for appearances in Indiana.

After conviction in the Southern District of Indiana, the court stated that Chappell may remain at liberty under the present bond, with the same conditions as to travel as before, and with the further condition that he report to the probation office nearest his home.

Although the record shows no order on the subject after sentencing, he was in fact permitted to remain at liberty pending appeal. There was no order requiring him to appear in Los Angeles after decision of his appeal. The district court, however, was in a position to order him taken into custody under his sentence, and Chappell had an obligation to return to Indianapolis, if required. We have no difficulty in according Chappell's agreement to surrender at Los Angeles (for his own convenience) the same force, for this purpose, as an order of the court. Chappell has not argued to the contrary.

In essence, Chappell argues that he was "admitted" to bail, or released, only in California. We do not agree, and treat each order on the subject by the magistrate or court in Indiana as a release for this purpose. We conclude that venue in the Southern District of Indiana was proper.

## II. CLAIM THAT COURT SHOULD HAVE GIVEN A LIMITING INSTRUCTION

■ The government offered 28 exhibits consisting of papers from the court file in the mail fraud case. They included the indictment and other papers pertaining to Chappell's arrest, the release and removal proceeding before the California magistrate, the release proceeding before the Indiana magistrate, the judge's direction concerning release after conviction, the sentence, the bond forfeiture, and the disposition of the appeal. All were arguably relevant (though cumulative in some degree) to proving that Chappell had been released pursuant to the Bail Reform Act and that his release had terminated by affirmance of his conviction and sentence. Some were relevant to his knowledge of his duty to appear, and thus to his willfulness.

The court gave Chappell an opportunity to examine the documents and object. He did not object to any except "the mail fraud indictment, unless we can have the additional two exhibits which were originally attached, and those were the two letters proving the mailing.... The two letters, the letter referred to in all the Counts 1 through 7, and the letter referred to in Counts 10 and 11." After the Assistant United States Attorney informed the court that he could find no attachments, the court overruled the objection.

It is argued on appeal that many of the documents contained irrelevant material and their prejudicial impact was unfair. Accordingly, they should not have been admitted, or at least a limiting instruction should have been given.

It happens that later, in a different connection, the court instructed that the indictment had been admitted solely to show that an indictment had been issued, and the jurors "are not to take into account or pay any attention to all of the things in the indictment."

There was no plain error, and no objection or motion to strike, stating the specific ground of objection now being argued. Accordingly, error cannot be claimed. Rule 103, FED.R.EVID. *See also United States v. Carter,* 720 F.2d 941, 945 (7th Cir.1983). Moreover, under the facts of this case, any error could not have affected the result.

## III. CLAIM OF UNREASONABLE DELAY IN INDICTMENT

■ The date of the offense was February 28, 1983. A complaint charging a violation of 18 U.S.C. § 3150 was filed August 11, 1983. Chappell was arrested upon his return from the Bahamas December 9, 1986, and indicted on December 19, 1986. He was indicted within 30 days of arrest, and there is no claim of a violation of the Speedy Trial Act. 18 U.S.C. § 3161(b). The indictment was returned within the five year period of limitations, 18 U.S.C. § 3282, although the government claims in any event that he was a fugitive from justice. 18 U.S.C. § 3290. Although statutes of limitations provide the primary check on preindictment delay, the due process clause may occasionally come into play as well.

> A pre-indictment delay will not violate due process unless defendant is able to prove that the delay caused actual and substantial prejudice to his or her fair trial rights and that the government delayed indictment for tactical advantage or some other impermissible reason.

*United States v. Watkins*, 709 F.2d 475, 479 (7th Cir.1983). Chappell made no showing of prejudice, nor that the government was culpable in the delay. Indeed, the government's reason for delay was that Chappell had fled the country. *See United States v. Solomon*, 688 F.2d 1171, 1179 (7th Cir.1982) (no showing of pre-indictment delay when real cause of delay was defendant's flight and change of identity). Chappell's claim of unreasonable delay is untenable.

## IV. CLAIM THAT COURT IMPROPERLY LIMITED DEFENDANT'S ARGUMENT TO THE JURY

It appeared that an agent of the Internal Revenue Service had executed a search warrant at Chappell's office February 16, 1983 and had seized numerous records involving a large number of clients or customers. Chappell testified that he felt responsibility for these people's assets; that he made a decision to leave the country and never come back; that his decision was not based on the time he would have to serve under his sentence, but "upon the necessity of defending the company, the new company, and also taking care of the assets of those clients."

Chappell apparently contends that some danger to his business interests or those of his clients compelled him to remain free and thus prevented him from surrendering for service of his sentence, and thus excused his failure to appear. He did not attempt to spell out why this was so other than the testimony just summarized.

Chappell asked for an instruction based on the affirmative defense that uncontrollable circumstances prevented his surrendering on the agreed upon date. (This defense is currently set forth in 18 U.S.C. § 3146(c) (Supp.1984), though no analogous provision appeared in 18 U.S.C. § 3150 (1982), which governed failures to appear at the time of Chappell's offense.) Doubtless out of abundance of caution, the court agreed to give the instruction, and did so, as follows:

> The defendant has presented the affirmative defense that he had a legal excuse for willfully failing to appear or surrender. For this defense to constitute a legal excuse for the crime charged in the indictment the following conditions must exist.
>
> 1. Uncontrollable circumstances must exist which prevented the defendant from appearing or surrendering.
>
> 2. The defendant did not contribute to the creation of the circumstances in reckless disregard of the requirement to appear or surrender; and
>
> 3. The defendant appeared or surrendered as soon as such circumstances ceased to exist.

In closing argument, Chappell referred to the anticipated instruction and argued that he had no control over the IRS search warrant. The court interrupted and said:

> [T]he Court has ruled that the events of February 16 between you and the Internal Revenue Service have nothing whatsoever to do with the indictment in this case. . . .

And I want the jury to understand that, that those matters have nothing to do with this case whatsoever....

Your arguments are to be confined to the indictment in this case and the evidence as it comes to us in this courtroom.

Chappell argues on appeal that these remarks of the court prevented him from fully arguing his defense and, in effect, removed it from the jury's consideration.

Although the affirmative defense language of present § 3146(c) was not part of § 3150 at the time of Chappell's offense, some type of defense of necessity would probably have been recognized. *See United States v. Atencio,* 586 F.2d 744 (9th Cir.1978), recognizing a defense of duress, although holding that defendant had not produced evidence entitling him to have the jury consider it.

Here the causal link between the search and seizure and Chappell's failure to appear twelve days later was never really articulated, let alone shown to have overwhelming or compelling force, continuing almost four years.

In *Atencio* the court said,

Because we believe that Atencio failed to present sufficient evidence as to the immediacy of the danger to which he would be subjected by appearing for trial, or evidence that he had no opportunity to do anything other than flee to avoid danger to himself, the court below did not err in withdrawing the defense of duress from the jury's consideration.

586 F.2d at 747. Similarly here, we find an absence of evidence that the search and seizure or any other circumstances "prevented" Chappell from appearing as required.

A defendant is not entitled to an instruction on a particular defense unless there is evidence tending to establish it. *United States v. Wheeler,* 800 F.2d 100, 107 (7th Cir.1986); *U.S. v. Martin-Trigona,* 684 F.2d 485, 493 (7th Cir.1982). Although the instruction was given in this case, Chappell was not entitled to it, and cannot complain of the court's preventing him from arguing it.

Finding no error, the judgment appealed from is AFFIRMED.